779 P.2d 355

**STATE of Arizona, Appellee,**

v.

**Darrell BEDONI, Appellant.**

**No. 1 CA–CR 88–617.**

Court of Appeals of Arizona, Division 1, Department A.

Aug. 29, 1989.

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser, Chief Counsel, Criminal Div., Diane M. Ramsey, and Paul McMurdie, Asst. Attys. Gen., Phoenix, for appellee.

Aspey, Watkins & Diesel by Wendy F. White, Flagstaff, for appellant.

## 482

### OPINION

JACOBSON, Presiding Judge.

Appellant Darrell Patrick Bedoni (defendant) appeals from his convictions of forgery, driving while under the influence of intoxicating liquors (DUI) with two prior convictions, and DUI on a revoked license. The main issue on appeal is whether the signing of a fictitious name to a traffic citation can constitute the crime of forgery. We affirm the convictions, but remand for resentencing because defendant's sentence was improperly enhanced by conviction of two crimes committed on the same occasion.

### Facts

The following facts are viewed in the light most favorable to sustaining the convictions. *See State v. Olivas*, 119 Ariz. 22, 579 P.2d 60 (App.1978). On October 4, 1987, Sergeant Ray Martinez of the Flagstaff Police Department stopped a vehicle after observing that it was being driven slowly, it stopped past the stop line at one intersection, and it went over the yellow line after a right turn at another intersection.

As he approached the vehicle, Martinez smelled the odor of liquor coming from inside the car. Defendant was in the driver's seat, appeared dazed, and had alcohol on his breath. When asked for his license, defendant said he had left it at home, but told Martinez his name was John Begay and that he had a valid New Mexico license.

Officer Frank Manson then arrived at the scene. Manson advised Martinez that there was an outstanding warrant for the arrest of the owner of the car. Manson also had information on the vehicle and the physical description of the registered owner, "John Bedoni."

Martinez began to give the field sobriety test to defendant. He testified that defendant failed the balance test. He could not recall any other details of the test because no field sobriety test form had been prepared due to a miscommunication between Martinez and Manson. Manson, who testified he had observed the tests, testified

defendant could not stand on one leg, and failed the heel-to-toe test.

Manson wrote defendant a traffic citation for driving without a license. He offered it to defendant to sign the "promise to appear" portion of the ticket. Defendant first started writing a "D," then wrote over it "John Begay." One of the two passengers in the vehicle, who had previously denied knowing defendant, called defendant "Darrell."

Martinez then searched the vehicle. Defendant at that time had not been placed under arrest. Martinez found three items of identification in the name of Darrell Bedoni stuck between the door jamb and the left side of the front seat. He also found empty and full beer cans and bottles stuffed under the front seat. Manson showed the identification to defendant, who then admitted he was Darrell Bedoni. Defendant was arrested, and refused to take the breath test.

Defendant was convicted of forgery, DUI with two prior convictions, and DUI on a revoked license. His motion for new trial was denied. Defendant was given one-year, concurrent sentences on the DUI convictions. The court utilized the DUI conviction as a prior felony for the purpose of enhancing the forgery conviction and sentenced defendant to four years of imprisonment on the forgery conviction, to run concurrently with the other sentences. The court also imposed a fine of $500 and a felony assessment of $100 on both DUI offenses. Defendant timely appealed.

### Forgery Count

██ Defendant's main argument on appeal is that the trial court erred in not directing a verdict as to the forgery count. Defendant contends his conduct did not constitute forgery because his conduct violated only A.R.S. § 13–2907.01 (forbidding giving false information to a police officer). Defendant also contends that the traffic citation was not "a written instrument" under A.R.S. § 13–2002; that he did not defraud anyone by signing the citation "John Begay" because to defraud means to deprive a person of property or any inter-

est, estate or right; and that the false signature did not change the legal effect of the instrument. We disagree.

"Forgery" is defined, in relevant part, as follows:

A person commits forgery if, with intent to defraud, said person:

(1) Falsely makes, completes or alters *a written instrument* . . . .

A.R.S. § 13–2002(A) (emphasis added). "Written instrument" is defined, in relevant part, as:

*Any paper*, document or other instrument containing written or printed matter or its equivalent.

A.R.S. § 13–2001(9)(a) (emphasis added). The issue is whether a traffic citation falls within the definition of this broadly-worded statute. That defendant could have been prosecuted for giving false information is not relevant; choosing the appropriate crime with which to charge a defendant is a matter of prosecutorial discretion. *E.g., State v. Sommer*, 155 Ariz. 145, 745 P.2d 203 (App.1987).

In our opinion, there is no question that a traffic citation constitutes "any paper" and is within the broad statutory definition of a written instrument. The acknowledgement signed by defendant states, "Without admitting responsibility, I acknowledge receipt of this complaint." Defendant signed it "John Begay."

Next we address whether such an act constitutes an "intent to defraud." Although we have not found a case holding that signing such an acknowledgement constitutes a forgery, in three cases a defendant's false signature on a police fingerprint card has been held to constitute a forgery of a written instrument. *See People v. Bigus*, 115 A.D.2d 751, 497 N.Y.S.2d 145 (App.Div.1985); *People v. Hennessy*, 133 A.D.2d 174, 518 N.Y.S.2d 988 (App.Div. 1987); *State v. Edwards*, 201 Conn. 125, 513 A.2d 669 (1986). We believe the rationale of those cases is applicable here.

In *People v. Bigus*, the court considered whether signing a fingerprint card constitutes a forgery of a written instrument under New York Penal Law § 170.00(1), which defines "written instrument" as:

[A]ny instrument or article containing written printed matter or the equivalent thereof . . ., which is capable of being used to the advantage or disadvantage of some person.

Like defendant's argument here, Bigus argued that the fingerprint card was not capable of being used to "the advantage or disadvantage of some person." The court disagreed:

This contention is without merit, for it ignores the very real advantage gained by the criminal suspect who, in signing a name other than his own, is thereby able to conceal from the authorities, at least temporarily, his true identity and any criminal history which he might have. As other courts have observed, such an intentional deception could lead the authorities to reasonably (albeit incorrectly) conclude that the suspect has no criminal record, and there might be a release on the suspect's own recognizance or upon greatly reduced bail. . . .

115 A.D. 751, 497 N.Y.S.2d at 146. This opinion was affirmed on review for the reasons stated in the lower appellate court's decision. *People v. Bigus*, 68 N.Y.2d 723, 506 N.Y.S.2d 333, 497 N.E.2d 700 (1986). *Bigus* was followed in *People v. Hennessy*, which held that an indictment which alleged the signing of a false name to a fingerprint card contained sufficient allegation of fraudulent intent that the defendant "falsely made" a written instrument. 133 A.D.2d at 174, 518 N.Y.S.2d at 988.

*State v. Edwards* also involved a defendant who signed a fingerprint card with a name other than his own. The Connecticut Supreme Court found sufficient evidence of all elements, including "intent to defraud, deceive or injure," to support a forgery conviction. 513 A.2d at 683. Although the Connecticut statute is more specific than the Arizona statute in providing that forgery includes false completion of a public record, the Connecticut statute like the Arizona statute requires an "intent to defraud."

Contrary to defendant's argument, defendant's false signature on the form does constitute an "intent to defraud." *See People v. Hennessy.* The false signature changes the effect of the acknowledgement of receipt and promise to appear. Obviously such acknowledgement and promise to appear by a fictitious person is meaningless. It deceives the officer and the court system, not to mention risking trouble for some unknown person named "John Begay." It conceals the true identity of the perpetrator of the alleged crime and seeks to obtain the release, without incarceration, of someone not entitled to release. In our opinion, all of these acts could be found by a jury to constitute an "intent to defraud."

### Validity of Search

■ Defendant's next argument is that the trial court erred in denying his motion to suppress evidence seized from the car. We disagree. Even though defendant had not yet been arrested, it is clear from the officer's observation that probable cause existed for an arrest for driving while under the influence. The officer did not act unreasonably by searching the car before instead of after the arrest. *See State v. Carroll,* 111 Ariz. 216, 526 P.2d 1238 (1974); *State v. Clevidence,* 153 Ariz. 295, 736 P.2d 379 (App.1987). Also, in view of the warrant information about the owner of the car, defendant's peculiar signing of the complaint, and the fact that the passenger called defendant "Darrell," the officer had probable cause to believe that defendant had given a false name to the officers and to further believe that the car contained evidence that would support that conclusion. *See State v. Dixon,* 127 Ariz. 554, 622 P.2d 501 (App.1980). Furthermore, because the smell of alcohol was coming from the car, the officer could reasonably believe that the vehicle might contain evidence pertinent to the DUI charge. *See State v. Hersch,* 135 Ariz. 528, 662 P.2d 1035 (App.1982). Thus, the officer had probable cause to search the car, and the trial court did not err in denying the motion to suppress.

### Evidentiary Issues

■ Defendant next argues that the trial court erred in admitting four items of evidence. The first evidentiary item defendant challenges is testimony that his conduct seemed influenced by alcohol. During trial, the prosecutor asked the following questions of Sergeant Martinez:

Q. Are you familiar through your years of experience with any of the symptoms that demonstrate that a person might have been affected by the intake of alcohol?

A. Yes, I am.

Q. What are some of those symptoms?

A. Swaying, balance, uncoordination, slurred speech, somewhat of a vague look, incoherency, stuporousness.

Q. Did you notice any of those things about the defendant's demeanor?

A. Yes, I did.

Q. How did he appear to you?

At this point in questioning, defense counsel objected and argued outside the hearing of the jury that "a police officer is not entitled to give his opinion with regard to whether or not a person is under the influence of alcohol because that is the ultimate issue for the jury." The prosecutor argued that "an officer who had had an opportunity to observe the defendant may describe his appearance, as far as whether he appeared to be under the influence or whether his conduct was influenced by the consumption of alcohol." The court overruled the objection, and questioning continued as follows:

Q. Sergeant Martinez, did the defendant's conduct, the conduct that you observed, seem influenced by alcohol?

A. It did.

Similarly, in questioning Officer Manson, the prosecutor asked the following:

Q. During the time that you were there for the purpose of doing the breath test, did you have further opportunity to observe the defendant?

A. I did.

Q. And was that period of observation taken into account in completing the refusal form that you referred to and which has been admitted?

A. Yes. I felt that his conduct and my observations were both consistent at the stop scene and inside the Sheriff's Office.

Q. Did it seem to you that the defendant's conduct was influenced by alcohol?

A. It did.

This testimony was specifically suggested to be proper in the supplemental opinion in *Fuenning v. Superior Court,* 139 Ariz. 590, 605, 680 P.2d 121, 136 (1983). In *Fuenning,* the court stated that, although a police officer should not be asked his opinion on whether the defendant was driving while intoxicated,

> [i]t ordinarily would be proper to ask the witness in such a case whether he or she was familiar with the symptoms of intoxication and whether the defendant displayed such symptoms. The witness might be allowed to testify that defendant's conduct seemed influenced by alcohol.

*Id. See also State v. Askren,* 147 Ariz. 436, 710 P.2d 1091 (App.1985). We therefore find no error in admission of this testimony.

■ The second evidentiary item challenged is the admission of Officer Manson's report, which stated that defendant refused to take the breath test. Manson's report was offered into evidence to rebut the defense attack that Manson did not remember what defendant had done in the field because he had not prepared a field sobriety test form. The report was admissible under Rule 801(d)(1)(B), Arizona Rules of Evidence, as a prior consistent statement. We find no error.

■ The third evidentiary item challenged is testimony that police found full and empty beer cans under the front seat of the car. Defendant contends that this evidence is irrelevant and, even if relevant, unfairly prejudicial. Certainly the fact that defendant had easy access to beer when he in fact smelled of beer, is relevant. Moreover, Sergeant Martinez had already testified without objection that the car interior itself smelled of alcohol when he first stopped it, so testimony as to the presence of beer bottles and cans inside the car was not unfairly prejudicial to defendant. Admission of this testimony was not reversible error.

■ Finally, defendant urges error in the court's failure to strike the answer after the following question on cross-examination:

Q. Officer, do you know who John Begay is?

A. No, I do not.

Q. So, you don't know whether or not Mr. Bedoni can use that name, do you?

A. I know that he cannot.

Q. You don't know Mr. Begay, do you?

A. That's immaterial. It is illegal for a person to use a fictitious name to a police officer. So therefore whether he has permission. . . .

The trial court did not rule on defense counsel's immediate objection, but asked defense counsel to rephrase the question. When defense counsel asked the witness whether John Begay authorized defendant to use the name, the state objected that the question was irrelevant, and the court sustained the objection on that ground.

The court's ruling on the state's objection told the jury exactly what the officer had testified to, and that the issue of permission or authorization was irrelevant. We find no reversible error.

### Jury Instruction

■ Defendant's next argument is that the trial court erred in instructing:

> A person who is arrested for driving under the influence of intoxicating liquor is required by law to submit to a breath test to determine the level of alcohol in his body. If you find that the defendant refused to submit to such a test you may consider the fact of refusal as evidence that the defendant was under the influence of an intoxicant. You are to give the evidence such weight as you determine to be appropriate, together with all of the evidence in this case.

Defendant is incorrect. The court may instruct the jury that a defendant's refusal to submit to a test may be considered as evidence against him. *State v. Superior*

*Court,* 154 Ariz. 574, 744 P.2d 675 (1987). Moreover, the instruction is proper because it directs a permissive presumption, not a mandatory one. *See State v. Spoon,* 137 Ariz. 105, 669 P.2d 83 (1983).

Next, defendant argues that the court erred in giving the following instruction:

To defraud means to obtain any benefit or advantage by fraud, deceit or artifice.

Defendant's refused instruction was:

Defraud means to deprive another person of property or any interest, estate or right by fraud, deceit or artifice.

From comparing the two instructions it is clear defendant's objection relates only to the given instruction's "to obtain any benefit or advantage" versus the denied instruction's "to deprive another person of property or any interest, estate or right...." This argument is merely a continuation of defendant's previous argument that "defraud" can only occur in the acquisition of property. Again we disagree.

The Arizona Criminal Code, curiously, does not define the phrase "to defraud." *See* R. Gerber, *Criminal Law of Arizona,* State Bar of Arizona (1978) at 279. However, the criminal code has not limited the "fraud" crimes to only those in which the defendant obtains a monetary or property advantage. Thus, A.R.S. § 13–2310 makes it a crime for any one who "obtains any benefit" by means of a fraudulent scheme or artifice to defraud. Also, one commentator on the Arizona Criminal Code has indicated that the proper definition of intent to defraud under A.R.S. § 13–2002 is "an intent to obtain any benefit...." Gerber, *supra* at 281.

In our opinion, the "intent to defraud" requirement of the forgery statute can be satisfied by the showing that the defendant obtained "benefit or advantage." The court's instruction was therefore proper.

### Same Occasion Offenses

■ Defendant also argues that the trial court erred in considering the DUI as a prior conviction for the forgery conviction for the purposes of enhancing defendant's sentence. To support its argument that these were not spree offenses for purposes

of A.R.S. § 13–604(H), the state cites *State v. Henry,* 152 Ariz. 608, 734 P.2d 93 (1987). However, we read *Henry* to support defendant's claim. *Henry* states:

In general, however, when different crimes, even though unrelated in nature, are committed at the same place, on the same victim or group of victims, and at the same time or as part of a continuous series of criminal acts, they should be considered as having been committed on the "same occasion" for purposes of sentence enhancement.

*Id.* at 612, 734 P.2d at 97. In *Henry,* defendant and his accomplice forced their way into an apartment, ordered the manager to open the safe, and repeatedly raped the manager. They were convicted of armed burglary, armed robbery, and armed rape. The court held these acts were committed on the same occasion.

The acts here were certainly committed on the same occasion. Defendant's crime of DUI ended when his car stopped. The forgery was committed immediately thereafter. Thus the two crimes were, just as in *Henry,* at the same time and the same place, even though not simultaneous.

Furthermore, the crimes were part of one continuous series of acts. Defendant was stopped for suspected DUI. He was asked to show his license and did not have one. He was cited for driving without a license. His acknowledgement of the citation was the basis of the forgery. We can see no more substantial "break" between the crimes in *Henry* than between those here.

Because defendant's sentence was improperly enhanced by an offense committed on the same occasion, we must remand for resentencing. We note that the court stated it was imposing the minimum sentence of four years for a class 4 repetitive felony, and expressed regret for having to impose the mandatory sentence. The minimum sentence on a class 4 nonrepetitive felony is two years.

■ Finally, defendant argues, and the state concedes, that the trial court erred in imposing identical fines and assessments

on the two DUI charges. Such a fine is improper under *State v. Sheaves*, 155 Ariz. 538, 747 P.2d 1237 (App.1987). Because we must remand for resentencing, we will leave it to the trial court to correct this error, rather than modifying the sentence pursuant to A.R.S. § 13–4037.

Pursuant to A.R.S. § 13–4035, we have reviewed the record for fundamental error, and except as specifically stated herein, have found none. For the above reasons, the convictions are affirmed and the matter is remanded for resentencing.

BROOKS and CLABORNE, JJ., concur.