1998-NMCA-087

964 P.2d 820

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Bradley WASSON, Defendant–Appellee.**

No. 18646.

Court of Appeals of New Mexico.

April 16, 1998.

Certiorari Denied June 24, 1998.

Tom Udall, Attorney General, Ralph E. Trujillo, Assistant Attorney General, Santa Fe, for Plaintiff-Appellant.

Phyllis H. Subin, Chief Public Defender, Will O'Connell, Assistant Appellate Defender, Santa Fe, for Defendant-Appellee.

## OPINION

ARMIJO, Judge.

{1} The State appeals the district court's order dismissing three counts of forgery arising from allegations that Defendant signed his brother's name to a set of traffic citations issued by a sheriff's deputy. Because we determine that these allegations fall within the forgery statute, NMSA 1978, Section 30–16–10(A) (1963), we reverse the district court's order and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

{2} On February 28, 1997, a San Juan County sheriff's deputy stopped a vehicle driven by Defendant. According to the sheriff's deputy, Defendant identified himself as "Ryan Wasson" and said his birth date was September 14, 1978. After determining that there was no driver's license corresponding to the name and date of birth given by Defendant, the sheriff's deputy issued three traffic citations for failure to stop at a stop sign, no insurance, and no driver's license. Defendant allegedly signed the name "Ryan Wasson" to all three traffic citations. The sheriff's deputy later ascertained that "Ryan Wasson" is Defendant's brother.

{3} On March 27, 1997, the State filed a criminal information alleging that Defendant committed three counts of forgery by making false signatures on the traffic citations. Defendant waived the preliminary examination on March 13, 1997, and responded with a motion to dismiss all the forgery charges on June 12, 1997. Defendant's motion asserted that his alleged conduct did not constitute the crime of forgery or, in the alternative, that his alleged conduct could be prosecuted only under the statute making it a petty misdemeanor to conceal one's identity. NMSA 1978, § 30–22–3 (1963).

{4} On June 23, 1997, the district court granted Defendant's motion to dismiss based on its conclusion that Defendant destroyed the legal efficacy of the traffic citations by signing his brother's name on them. Without any legal efficacy, the district court reasoned, the citations could not evince any intent to injure or defraud Defendant's brother. This appeal followed.

## II. DISCUSSION

### A. *Standard of Review*

{5} For purposes of this appeal, we assume the truth of the factual allegations in the State's pleadings. *Cf.* Rule 5–601(B) NMRA 1998 (defense may be raised by pretrial motion if it is "capable of determination without a trial on the merits"); 1 Charles A. Wright, *Federal Practice and Procedure* § 194, at 714 (1982) (standard of review for pretrial motion attacking sufficiency of indictment or information under Fed.R.Crim.P. 12(b)). *But cf. State v. Ogden,* 118 N.M. 234, 238–41, 880 P.2d 845, 849–52 (1994) (authorizing limited evidentiary hearing regarding factual basis for aggravating circumstances in capital-murder prosecution). Defendant's motion to dismiss does not attempt to contradict these allegations, *see State v. Mares,* 92 N.M. 687, 688–89, 594 P.2d 347, 348–49 (Ct. App.1979), and thus it presents a purely legal issue of whether forgery charges can be predicated on Defendant's alleged conduct, *see State v. Foulenfont,* 119 N.M. 788, 790, 895 P.2d 1329, 1331 (Ct.App.1995); *State v. Tabaha,* 103 N.M. 789, 789, 714 P.2d 1010, 1010 (Ct.App.1986).

{6} Whether forgery charges can be predicated on Defendant's alleged conduct is a question of statutory interpretation to which we afford de novo review. *See State v. Arellano,* 1997–NMCA–074, ¶ 3, 123 N.M. 589, 943 P.2d 1042. "[T]he language of penal statutes should be given a reasonable or common sense construction consonant with the objects of the legislation, and the evils sought to be overcome should be given special attention." *Ogden,* 118 N.M. at 243, 880 P.2d at 854.

### B. *Legal Efficacy of Uniform Traffic Citations*

{7} We first address the district court's conclusion that forgery charges could not be predicated on the traffic citations because Defendant destroyed their legal efficacy by signing his brother's name on them. The forgery statute provides, in relevant part, that "[f]orgery consists of ... falsely making or altering any signature to, or any part of, any writing purporting to have any legal efficacy with intent to injure or defraud." Section 30–16–10(A). Interpreting the forgery statute, this Court has defined the element of "legal efficacy" in terms of " 'an instrument which upon its face could be made the foundation of liability' and 'an instrument good and valid for the purpose for which it was created.' The writing must be such that, if genuine, it would apparently operate to the legal prejudice of another." *State v. Nguyen,* 1997–NMCA–037, ¶ 14, 123 N.M. 290, 939 P.2d 1098 (quoting *State v. Cowley,* 79 N.M. 49, 52, 439 P.2d 567, 570 (Ct.App.1968)). Although forgeries often involve documents relied upon to establish financial obligations and entitlements in the conduct of private business, *see id.* ¶¶ 13, 15, 123 N.M. 290, 939 P.2d 1098, they also may involve "any document required by law to be filed or recorded or necessary or convenient to the discharge of a public official's duties." 4 Charles E. Torcia, *Wharton's Criminal Law* § 491, at 94 (15th ed.1996).

{8} Uniform traffic citations are relied upon in the discharge of a law enforcement officer's duties. When an arrested person does not contest the violations with which he or she is charged, the uniform traffic citation

functions as an agreement to pay a penalty assessment. *See* NMSA 1978, § 66–8–123 (1989). When the arrested person declines to accept a penalty assessment notice, the uniform traffic citation functions as a complaint which provides the arrested person with notice to appear in court. *See id.;* NMSA 1978, § 66–8–131 (1990). Moreover, uniform traffic citations may have legal efficacy because, "[i]n order to secure his release, the arrested person must give his written promise to appear in court or to pay the penalty assessment prescribed." Section 66–8–123(D). Even when the arrested person does not assume a financial obligation by agreeing to pay the penalty assessment, uniform traffic citations provide the foundation for liability because "[i]t is a misdemeanor for any person to violate his written promise to appear in court, given to an officer upon issuance of a uniform traffic citation, regardless of the disposition of the charge for which the citation was issued." NMSA 1978, § 66–8–126(A) (1978). For these reasons, other states have analogized a traffic citation to an appearance bond. *See Rushing v. State,* 684 So.2d 856, 857 (Fla.Dist.Ct.App.1996).

■■■ {9} Based on these authorities, we conclude that the forgery statute includes uniform traffic citations among the types of writings which may purport to have legal efficacy. The district court's concern that Defendant's false signatures may have destroyed the legal efficacy of the traffic citations at issue here does not alter this conclusion because the statute plainly is not limited to writings which actually have legal efficacy. Rather, the statute applies to any writing which *purports* to have legal efficacy, *see* § 30–16–10(A), and the crime of forgery is complete as soon as the false signature is made on such a writing with the requisite intent, *see Nguyen,* 1997–NMCA–037, ¶ 16, 123 N.M. 290, 939 P.2d 1098. Here the allegations are sufficient to show that the traffic citations purported to have legal efficacy because Defendant allegedly made the signatures to appear as if they were valid acknowledgements that he agreed to pay a penalty assessment or appear in court to answer the charges. *See* § 66–8–123; *Black's Law Dictionary* 1236 (6th ed.1990) (defining "purport" as "to have the appear-

ance of being, intending, claiming, etc."). Thus, it was error to dismiss the information based on a lack of purported legal efficacy.

### C. *Intent to Injure or Defraud*

■■■ {10} We next address the trial court's ruling that Defendant's conduct did not provide a basis for charging him with forgery because he had no intent to injure or defraud his brother, Ryan Wasson. The forgery statute does not require that the forger intend to injure or defraud a particular person. *See State v. Smith,* 32 N.M. 191, 204–05, 252 P. 1003, 1009 (1927); 4 Torcia, *supra* § 477, at 73. In addition, there is no requirement that the person whom the forger intends to defraud or injure be the same person whose name is forged. *See State v. Nation,* 85 N.M. 291, 292, 511 P.2d 777, 778 (Ct.App.1973) (forger had requisite intent to injure or defraud pharmacist by knowingly presenting prescription containing doctor's false signature); 4 Torcia, *supra* § 477, at 73 (intent may relate to person not named in the forged writing). Hence, the inquiry is not limited to whether Defendant intended to injure or defraud his brother.

■■■ {11} Moreover, a forgery conviction does not depend on whether Defendant actually succeeded in defrauding or injuring someone. The forgery is complete when the forger makes the false signature with the requisite intent, regardless of whether its falsity is detected before the forger absconds with the fruits of the crime or shifts liability to another person. *See Nguyen,* 1997–NMCA–037, ¶ 16, 123 N.M. 290, 939 P.2d 1098; *Nation,* 85 N.M. at 292, 511 P.2d at 778. Thus, the forgery charges against Defendant are not precluded by the allegation that the arresting officer detected the falsity of the signatures before any further effort was made to hold Defendant or his brother liable for a penalty assessment or a failure to appear.

■■■ {12} The current procedural posture of this case presents an additional obstacle to Defendant's contention that he lacked the requisite intent to sustain a forgery conviction. A defendant's knowledge or intent generally presents a question of fact

for a jury to decide. *See Nation*, 85 N.M. at 292, 511 P.2d at 778. Further, since a defendant's intent is rarely subject to direct proof, it may be proven by circumstantial evidence. *See State v. Pisio*, 119 N.M. 252, 259, 889 P.2d 860, 867 (Ct.App.1994); *cf. State v. Esquivel*, 71 Wash.App. 868, 863 P.2d 113, 115 (Wash.Ct.App.1993) (intent to commit forgery may be inferred from surrounding facts and circumstances if they plainly indicate such intent as a matter of logical probability). Thus, in the context of a pretrial motion that simply tests the legal sufficiency of the criminal information and assumes the State's factual allegations to be true, we must limit our inquiry to the purely legal question of whether Defendant's false signatures on the traffic citations were capable of evincing an intent to injure or defraud anyone under the facts and circumstances alleged by the State. *Cf. Esquivel*, 863 P.2d at 115 (ruling on issue of intent to defraud in context of pretrial motions).

{13} In answering this question, we need not speculate about what injury might befall the person whose name Defendant falsely signed on the traffic citations because we determine that such false signatures are sufficiently capable of evincing an intent to injure or defraud the arresting officer and the court in which the traffic citations are filed. The signatures on the traffic citations were to serve as Defendant's promise that he would pay the penalty assessments or appear in court. *See* § 66–8–123(D). The arresting officer was required to secure such a promise as a condition of Defendant's immediate release. *See id.* However, making false signatures on the citations would render Defendant's promises meaningless, thus allowing him to obtain his release without actually agreeing to pay a penalty assessment or appear in court. *See State v. Bedoni*, 161 Ariz. 480, 779 P.2d 355, 359 (Ariz.Ct.App. 1989).

{14} Under these circumstances, making a false signature could give rise to a reasonable inference that Defendant intended "to obtain the release, without incarceration, of someone not entitled to release." *Id.* at 359; *see also Esquivel*, 863 P.2d at 115. For the purposes of the forgery statute, such a fraud-ulent intent to obtain an individual's release from custody is essentially the same as the fraudulent intent involved in other cases where people forge documents in order to obtain something that is not rightfully theirs. *See People v. Gaul–Alexander*, 32 Cal. App.4th 735, 38 Cal.Rptr.2d 176, 180 (Cal. Dist.Ct.App.1995). In addition, Defendant's false signatures on the traffic citations may evince an intent to injure or defraud law enforcement officers or the courts by "conceal[ing] the true identity of the perpetrator of the alleged crime," *Bedoni*, 779 P.2d at 359, " 'temporarily hid[ing] from the authorities his prior criminal history[, and] hampering his identification by the police in future investigations.' " *Thornton v. State*, 636 N.E.2d 140, 141–42 (Ind.Ct.App.1994) (quoting *People v. Kirk*, 115 A.D.2d 758, 497 N.Y.S.2d 139, 140 (1985)).

{15} We determine that the forgery statute encompasses the above-described types of fraudulent intent. Thus, it was error to dismiss the information based on a lack of intent to injure or defraud.

### D. General–Specific Rule

{16} Defendant's next contention is that the general-specific rule requires Defendant to be charged with concealing his identity under Section 30–22–3 instead of forgery. The district court did not rely on the general-specific rule in its order dismissing the criminal information. However, we may affirm the district court's order on grounds not relied upon by the district court if those grounds do not require us to look beyond the factual allegations that were raised and considered below. *See State v. Franks*, 119 N.M. 174, 177, 889 P.2d 209, 212 (Ct.App.1994). Defendant's contention regarding the general-specific rule does not require us to look beyond the factual allegations that were raised and considered below. However, in light of these allegations, we determine that the general-specific rule does not provide a basis for affirming the district court's order.

{17} When the same conduct is punishable under both a general statute and a more specific statute, the general-specific rule ordinarily requires the State to prose-

cute only under the more specific statute if the two statutes cannot be harmonized. *See Arellano*, 1997–NMCA–074, ¶ 4, 123 N.M. 589, 943 P.2d 1042. However, for purposes of the general-specific rule, there is not an irreconcilable conflict between two statutes if each defines an offense containing an element that the other does not. *See State v. Ibn Omar–Muhammad*, 102 N.M. 274, 277, 694 P.2d 922, 925 (1985). When each offense contains an element that the other does not, it may be problematic to determine which one is more specific and which one is more general. *See Arellano*, 1997–NMCA–074, ¶ 9, 123 N.M. 589, 943 P.2d 1042. Hence, a court should not strain to apply the general-specific rule in such instances. *See id.*

{18} Applying these principles in the present case, we determine that the forgery statute and the concealing-identity statute can be harmonized because each defines an offense containing an element that the other does not. The elements of forgery include falsely making or altering a writing which purports to have legal efficacy, or knowingly issuing or transferring a forged writing. *See* § 30–16–10; *State v. Ruffins*, 109 N.M. 668, 670, 789 P.2d 616, 618 (1990). The elements of concealing identity include concealing one's true name or identity, or disguising oneself. *See* § 30–22–3; *United States v. Stenzel*, 49 F.3d 658, 662 (10th Cir.1995).

{19} Forgery differs from concealing identity because only the former crime specifically requires the use of a writing, and only the latter crime specifically pertains to one's own true name or identity. Thus, it is possible to commit the crime of concealing identity without making, altering, issuing, or transferring any writing. *See, e.g., Stenzel*, 49 F.3d at 662 (affirming conviction for concealing identity where the defendant refused requests to produce written identification). It is equally possible to commit the crime of forgery without concealing one's true name or identity or disguising oneself. *See, e.g., Esquivel*, 863 P.2d at 114–15 (vacating orders dismissing forgery charges where the defendants presented police with identification cards that revealed the defendants' true identities but were not authentic). *See gen-*

*erally* 4 Torcia, *supra*, § 481 (use of one's own name in commission of forgery). Moreover, it is problematic to discern which of the two statutes is the more specific one because forgery may be more specific with regard to the use of a particular physical object (a writing), while concealing identity may be more specific with regard to the use of a particular subject matter (one's true name or identity). For these reasons, we determine that the general-specific rule is inapplicable in this case and does not preclude the State from charging Defendant with forgery.

## III. CONCLUSION

{20} For the foregoing reasons, we reverse the district court's order of dismissal and remand for further proceedings consistent with this opinion.

{21} **IT IS SO ORDERED.**

HARTZ, C.J. and ALARID, J., concur.