This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36593**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**MICOLA SOPYN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Jeff Foster McElroy, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

The Law Office of Scott M. Davidson, Ph.D., Esq.
Scott M. Davidson
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**B. ZAMORA, Judge.**

**{1}** Defendant appeals from his conviction for second-degree murder, contrary to NMSA 1978, Section 30-2-1(B) (1994). Defendant articulates three issues on appeal: (1) "[w]hether the uncorroborated testimony of [the eyewitness] as to the circumstances of the shooting was inherently improbable or physically impossible, and thus an insufficient basis for a second-degree murder conviction"; (2) "[w]hether the State failed to prove beyond a reasonable doubt that [Defendant]'s act of shooting [Victim] was not the result of sufficient provocation"; and (3) "[w]hether the jury was improperly instructed

as to sufficient provocation and voluntary manslaughter." Having considered Defendant's arguments, we affirm.

**Background**

**{2}**     The State and Defendant both presented evidence at trial, telling very similar stories about how a night and day of partying ended with Defendant shooting Victim with a shotgun, resulting in Victim's death, with the significant difference being Defendant's state of mind at the time of firing the gun. Because the issues asserted on appeal require an understanding of the facts presented to the jury, we set forth the evidence presented at trial, noting when the parties disagreed.

**{3}**     On the evening before the incident at issue in this case, Defendant, Victim, and another man—Victim's boyfriend Gary Medina—were together at Defendant's residence. The three friends used cocaine until about 2:00 a.m., after which Victim and Medina left Defendant's home. Several hours later, on the morning in question, Defendant called Victim and Medina and said he was not feeling well and was suicidal, picked up Victim and Medina, and took them to his house. Later that morning, Defendant and Medina arranged to buy more cocaine, and all three smoked the cocaine at Defendant's house. Defendant and Victim also obtained and drank some vodka miniatures.

**{4}**     The parties do not dispute that Defendant, Medina, and Victim began arguing about money and about using more drugs. Defendant purchased more cocaine, but he did not want to share it with Victim and Medina. The argument escalated, and Victim "slapped [Defendant's] face, tore a painting she had given him, and walked out of the house." As Victim left, she told Medina to gather her things. Defendant locked the door behind her. Victim returned and knocked on the front door to tell Medina to hurry up.

**{5}**     At some point after Victim initially left Defendant's house, Defendant shot Victim, resulting in her death. The State and Defendant presented evidence supporting opposing theories as to how the shooting happened and, crucially, whether it was an accident. According to Defendant, after Victim allegedly struck him, he armed himself with a loaded shotgun in order to shoot into the air and scare Victim and Medina into leaving his residence. Instead, after a scuffle between Defendant and Victim, Defendant shot Victim in the left side of her chest, and she died as a result of the wound. This version of events describes an unintentional shooting that was caused when Victim and Defendant "were in the doorway, they got in a tussle; she grabbed the barrel of the gun from him. Then the gun went off, creating a large, fatal wound to the left-hand side of her body." It appears that this theory is based on the audio-tape of Defendant's police interview, which was played at trial and also was provided to the jury via an unofficial transcript.

**{6}**     The State presented testimony that Defendant contends also supports his theory that Victim's death was accidental. In particular, a neighbor and a passerby who stopped to assist at the scene both testified that Medina said the shooting was an

accident, although Medina testified that he did not recall making those statements. In support of the State's theory that the shooting was not an accident, however, the passerby witness also testified that Defendant said twice to Medina, "Well, you saw her. She hit me right across the face."

{7}     The State also presented several law enforcement and forensic witnesses, whose testimonies Defendant likewise contends support his theory. A medical examiner, a firearms expert, and a retired crime scene analyst from the New Mexico State Police all testified regarding the forensics of the firearm evidence and the trajectory of the shot that killed Victim. In addition, Defendant presented his own firearms expert who testified regarding the trajectory of the shot that killed Victim. All four of the forensic witnesses testified that the gun shot came from a distance of less than a foot away and no more than three feet away from Victim.

{8}     In support of its theory of an intentional shooting, the State also presented testimony from Deputy Mauro Rosales regarding the investigation of the death. Deputy Rosales testified that, at the scene, Defendant told him that Victim "f-ing beat the f- out of me." The investigating detective, Detective Robert Salazar, interviewed Defendant and, in line with Defendant's theory, testified that Defendant claimed at the time of the incident that he knew the gun was loaded, but maintained the shooting was an accident. Detective Salazar also testified Defendant knew that Victim "was already leaving," but said "I hope she's a few feet away and I'm going to shoot in the air" so that she and Medina would stay away. Detective Salazar confirmed that Defendant claimed he thought the safety was on, he never pointed the shotgun at Victim, and his finger was not on the trigger.

{9}     With this background in mind, we turn to address Defendant's arguments on appeal.

**Discussion**

**I.      The "Inherent Improbability Doctrine"**

{10}    Defendant asks us to apply the "inherent improbability doctrine" and set aside his conviction, arguing that his conviction for second-degree murder is supported only by Medina's inherently implausible, physically impossible, and uncorroborated testimony. Based on the evidence presented at trial, we are unpersuaded and decline to reverse Defendant's conviction on this ground.

{11}    Under the inherent improbability doctrine, an appellate court may, in rare circumstances, set aside a conviction supported only by a lone witness's testimony that is inherently improbable and uncorroborated. *See State v. Armijo*, 1931-NMSC-008, ¶¶ 28-31, 35 N.M. 533, 2 P.2d 1075 (holding on rehearing that the inherently improbable, uncorroborated testimony of an accomplice was insufficient to support a conspiracy conviction). Application of the doctrine has resulted in the reversal of convictions in *State v. Taylor*, 1927-NMSC-006, ¶ 11, 32 N.M. 163, 252 P. 984 (setting aside a

conviction for statutory rape based on the alleged victim's inherently improbable story, uncorroborated by any unequivocal fact, in the interests of justice), and *Armijo*, 1931-NMSC-008, ¶¶ 28-31.

{12}    More recently, however, our Supreme Court briefly addressed the doctrine in *State v. Garcia*, 2011-NMSC-003, ¶¶ 6, 11, 149 N.M. 185, 246 P.3d 1057, declining to apply the doctrine when there was otherwise sufficient evidence to permit the jury to convict. Specifically, in *Garcia*, the defendant urged the Court to reject eyewitness testimony pertinent to a felony murder charge as "inherently unbelievable [because] each witness harbored reasons to provide false or misleading testimony, and therefore the testimony fails to meet a minimal standard of truthfulness." *Id.* ¶ 6 (internal quotation marks omitted). After undertaking a sufficiency analysis, the Court concluded that the non-conflicting testimony of multiple witnesses provided the jury with a reasonable basis to convict the defendant. *Id.* ¶ 11. Our Supreme Court reiterated that, "[b]ecause an appellate tribunal does not enjoy the same exposure to the evidence and witnesses as the jury at trial, our review for sufficiency of the evidence is deferential to the jury's findings." *Id.* ¶ 5. "In particular, New Mexico appellate courts will not invade the jury's province as fact-finder by second-guessing the jury's decision concerning the credibility of witnesses, reweighing the evidence, or substituting its judgment for that of the jury." *Id.* ¶ 5 (alterations, internal quotation marks and citation omitted).

{13}    Similarly, in the present case, Defendant argues that the State's case was based on inherently improbable evidence because it relied solely on Medina's testimony, which was in contradiction with all of the other evidence. *See, e.g.*, *Armijo*, 1931-NMSC-008, ¶ 34 (reversing when unreliable evidence came from a single witness). As our Supreme Court reasoned in *Garcia*, Defendant's argument warrants that we consider the sufficiency of the evidence supporting the intent element of second-degree murder, apart from Medina's testimony. *See Garcia*, 2001-NMSC-003, ¶ 11.

{14}    In reviewing the sufficiency of the evidence, we determine whether substantial evidence, either direct or circumstantial, exists to support a verdict of guilty beyond a reasonable doubt for every essential element of the crime at issue. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. We view the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all permissible inferences to uphold the conviction and disregarding all evidence and inferences to the contrary, to ensure that a rational jury could have found each element of the crime established beyond a reasonable doubt. *See id.*

{15}    The jury instruction on intent required the State to prove, beyond a reasonable doubt, that Defendant knew his actions created a strong probability of death or great bodily harm to Victim, he acted without sufficient provocation, and he acted intentionally. *See State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883 ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured."). We separately conclude that the sufficient provocation element was satisfied, below. We therefore only address at this juncture whether Defendant acted intentionally when he shot Victim.

**{16}** The State introduced testimony at trial that Defendant was very angry with Victim, that he said, "She f-ing beat the f- out of me" and said, "Well, you saw her. She hit me right across the face." The State also introduced evidence that Defendant took several affirmative steps or actions to create a strong probability of death or great bodily harm to Victim, including that he went to find his shotgun, loaded it, pumped it to chamber a round before approaching the door, took off the safety, and pulled the trigger. Moreover, there was testimony that the shot was fired at extremely close range at an individual who was already leaving the house. Finally, the State also presented evidence that Defendant and Victim had engaged in at least two separate arguments on that day, Victim had struck Defendant, Defendant armed himself with a loaded shotgun, and Victim was shot and died at the front door of the residence.

**{17}** Considering this evidence in the light most favorable to the verdict, we conclude the State presented sufficient circumstantial evidence to support the intent requirement, even if Medina's testimony were deemed inherently implausible, physically impossible, or internally contradictory. *See Garcia*, 2011-NMSC-003, ¶ 11 (concluding in a felony murder case that sufficient evidence was present to permit a jury to find all the elements of the crime beyond a reasonable doubt, which stood in "marked contrast to *Armijo*, the case relied upon by the defense, where th[e] Court reversed a conspiracy conviction based upon the inherently improbable, uncorroborated testimony of an accomplice who earlier had declared that the defendant was innocent"); *State v. Flores*, 2010-NMSC-002, ¶ 19, 147 N.M. 542, 226 P.3d 641 (stating that "circumstantial evidence alone can amount to substantial evidence"); *State v. Durant*, 2000-NMCA-066, ¶ 15, 129 N.M. 345, 7 P.3d 495 ("Intent can rarely be proved directly and often is proved by circumstantial evidence."); *State v. Wasson*, 1998-NMCA-087, ¶ 12, 125 N.M. 656, 964 P.2d 820 (holding that a defendant's knowledge or intent generally presents a question of fact for a jury to decide). Accordingly, Defendant's argument that the conviction relies on a lone witness fails, and as such, we do not conclude that the conviction was based solely on inherently improbable, or physically impossible testimony. *See Garcia*, 2011-NMSC-003, ¶ 11.

**{18}** Additionally, to the extent Defendant contends that Medina's pecuniary interest in the outcome of the trial lends credence to his inherent improbability theory—in light of Medina's wrongful death lawsuit against Defendant, seeking damages for Victim's death—we note that Medina testified he believed that the suit had been dismissed, and the jury was entitled to make its own determination about the credibility of that statement. *See State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482 (recognizing that it is for the fact-finder to resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lie). For all of these reasons, we conclude that Defendant's conviction was not based on the "inherently improbable" testimony of a single witness, *see Armijo*, 1931-NMSC-008, ¶¶ 28-31, and we decline to reverse on these grounds.

## II.      Lack of Sufficient Provocation

**{19}**   Defendant argues that there was evidence of sufficient provocation, and therefore a conviction for second-degree murder cannot stand. Defendant specifically contends there was "abundant evidence that there was sufficient provocation immediately prior to the shooting," and as such, voluntary manslaughter is the highest degree of homicide with which he could be convicted. Because the absence of sufficient provocation was an element of the crime charged, Defendant's argument again challenges the sufficiency of the evidence supporting this element.

**{20}**   To convict Defendant of second-degree murder, the State was required to prove beyond a reasonable doubt that: (1) "[D]efendant killed [Victim]"; (2) "[D]efendant knew that his acts created a strong probability of death or great bodily harm to [Victim]"; and (3) "[D]efendant did not act as a result of sufficient provocation." *See* UJI 14-210 NMRA; *see also Smith*, 1986-NMCA-089, ¶ 7. Further, the jury was instructed that:

> "Sufficient provocation" can be any action, conduct or circumstances which arouse anger, rage, fear, sudden resentment, terror or other extreme emotions. The provocation must be such as would affect the ability to reason and to cause a temporary loss of self control in an ordinary person of average disposition. The "provocation" is not sufficient if an ordinary person would have cooled off before acting.

UJI 14-222 NMRA. It is generally for the jury to decide whether any given act, condition, or circumstance could objectively be said to constitute sufficient provocation. *See State v. Stills*, 1998-NMSC-009, ¶¶ 36-37, 125 N.M. 66, 957 P.2d 51 (holding that the fact-finder must determine whether "an ordinary person of average disposition" in the same situation would have been provoked (internal quotation marks and citation omitted)); *State v. Taylor*, 2000-NMCA-072, ¶ 28, 129 N.M. 376, 8 P.3d 863 (holding that "[t]he question of whether the circumstances rose to the level of provocation to reduce second[-]degree murder to voluntary manslaughter was for the fact[-]finder to resolve").

**{21}**   In support of his argument, Defendant asks us to consider his statements during the course of the investigation that Victim had beaten him prior to the shooting. In response, the State points out that Defendant also told police during his interview that he was being hustled by Victim. Based on the evidence set forth earlier in this opinion and viewing such evidence in the light most favorable to the verdict, we conclude the jury could have found that the testimony regarding the unarmed Victim leaving Defendant's house and encouraging Medina to hurry up so they could leave satisfied the "lack of sufficient provocation" element of the jury instructions. In other words, we hold the testimony was sufficient to support a rational jury's determination that Defendant did not act as a result of sufficient provocation. *See* UJI 14-210, 14-222; *Stills*, 1998-NMSC-009, ¶¶ 36-37; *Taylor*, 2000-NMCA-072, ¶ 28; *see also State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." (internal quotation marks and citation omitted)); *State v. Akers*, 2010-NMCA-103, ¶ 32, 149 N.M. 53, 243 P.3d 757 ("We do not weigh the evidence or substitute our judgment for that of the fact[-]finder.").

### III. Jury Instructions

**{22}** Finally, Defendant argues that the jury was not properly instructed as to sufficient provocation and voluntary manslaughter, while simultaneously acknowledging that the jury instructions given "cover[ed] the bases." The instructions given in this case were consistent with the New Mexico Uniform Jury Instructions. *See* UJI 14-210 (second-degree murder); UJI 14-220 NMRA (voluntary manslaughter); UJI 14-231 NMRA (involuntary manslaughter); UJI 14-222 (sufficient provocation); UJI 14-250 NMRA (jury procedure for various degrees of homicide).

**{23}** Nonetheless, Defendant claims that it was fundamental error not to give the jury "a special interrogatory and not to correctly and clearly instruct them as to sufficient provocation, second-degree murder and voluntary manslaughter." No special interrogatory was requested in this case; in fact, as Defendant acknowledges, this argument is unpreserved. Therefore, we apply the fundamental error standard of review. *See State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 ("The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved we review the instructions for reversible error. If not, we review for fundamental error." (citation omitted)). Even when reviewing for fundamental error, "we seek to determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *Id.* (internal quotation marks and citation omitted).

**{24}** Uniform Jury Instruction 14-220, the voluntary manslaughter instruction, reads as follows:

> The difference between second[-]degree murder and voluntary manslaughter is sufficient provocation. In second[-]degree murder the defendant kills without having been sufficiently provoked, that is, without sufficient provocation. In the case of voluntary manslaughter the defendant kills after having been sufficiently provoked, that is, as a result of sufficient provocation. Sufficient provocation reduces second[-]degree murder to voluntary manslaughter.

Although the jury instruction in the present case followed the uniform jury instruction, Defendant nonetheless contends the "instructions were systematically ambiguous" and that "[a] clearer instruction would have informed the jury that [Defendant] did not have the burden to prove sufficient provocation." Defendant additionally contends that "[t]he jury should have been given a special interrogatory, asking it, in the event of a verdict of guilty for second-degree murder, whether or not it found that the State had proved beyond a reasonable [doubt] the lack of sufficient provocation."

**{25}** In reply, Defendant urges us to accept principles from *United States v. Alexander*, 471 F.2d 923 (D.C. Cir. 1972), and *People v. Garcia*, 1 P.3d 214 (Colo. App. 1999), to determine that the uniform jury instructions on provocation in homicide cases are "systematically ambiguous." We decline to do so here because when viewing the

instructions as a whole, we cannot say "a reasonable juror would have been confused or misdirected by the jury instruction[s]" about whether Defendant had the burden to prove sufficient provocation. *Benally*, 2001-NMSC-033, ¶ 12 (internal quotation marks and citation omitted); *see also State v. Ortega*, 2014-NMSC-017, ¶ 32, 327 P.3d 1076 (stating that the "[u]niform jury instructions are presumed to be correct"); *Jackson v. State*, 1983-NMSC-098, ¶ 5, 100 N.M. 487, 672 P.2d 660 (stating that when a uniform jury instruction is given for the elements of a crime, generally that instruction must be used without substantive modification). We therefore conclude no fundamental error occurred in this case.

**CONCLUSION**

**{26}**   For the foregoing reasons, we affirm.

**{27}   IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**MEGAN P. DUFFY, Judge**