This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41210**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellant,

v.

**CHRISTIAN KRONE,**

      Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY**
**R. David Pederson, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Jennifyr Vickery, Assistant Attorney General
Albuquerque, NM

for Appellant

Law Office of Barry Klopfer PC
Barry Klopfer
Albuquerque, NM

for Appellee

### MEMORANDUM OPINION

**IVES, Judge.**

**{1}** Defendant Christian Krone was charged with violating NMSA 1978, Section 30-3-8(B) (1993), for shooting at or from a motor vehicle; and NMSA 1978, Section 30-3-2(A) (1963), for assaulting or striking Deandre Eugene Cooper with a firearm. Because the investigating officer did not collect Mr. Cooper's vehicle or its door containing the alleged bullet hole from the crime scene, Defendant moved to dismiss the criminal information. The district court granted the motion pursuant to *State v. Chouinard*, 1981-

NMSC-096, 96 N.M. 658, 634 P.2d 680. The State appeals, arguing that the district court erred by (1) applying *Chouinard* because the governing test for the failure to collect evidence is set forth in *State v. Ware*, 1994-NMSC-091, 118 N.M. 319, 881 P.2d 679; (2) concluding that the evidence at issue is material; and (3) selecting an appropriate sanction. We agree with the State on the first point. We are unpersuaded by its argument regarding the second point. We offer no opinion on the third point because in order to determine what sanction—if any—is appropriate, it is necessary to answer a question of fact regarding the conduct of the investigating officer. See *id.* ¶ 26. We therefore reverse and remand for the district court to make that factual determination.

## DISCUSSION

{2}    We review a district court's grant of a motion to sanction for abuse of discretion, *State v. Duarte*, 2007-NMCA-012, ¶ 3, 140 N.M. 930, 149 P.3d 1027, which occurs, as relevant here, when a district court "exercises its discretion based on a misunderstanding of the law." *State v. Vigil*, 2014-NMCA-096, ¶ 20, 336 P.3d 380.

## I.    The *Ware* Two-Part Test Controls

{3}    The State argues that the court erred by applying the *Chouinard* test rather than the *Ware* test. We agree. The *Chouinard* test applies to situations where "the [s]tate destroys, loses, or fails to preserve evidence that has previously been collected during the investigation of a crime." *Ware*, 1994-NMSC-091, ¶ 15. However, the *Chouinard* test is not used "in cases where the [s]tate fails to gather physical evidence during the investigation of a crime scene." *Ware*, 1994-NMSC-091, ¶ 11. In such cases, courts must apply the test set forth in *Ware*. *Id.* ¶ 25. Because this case involves the failure to collect evidence, rather than the destruction of evidence, the *Ware* test controls. Indeed, the district court found that the State "fail[ed] to collect" Mr. Cooper's vehicle. Despite this finding and recognizing that *Ware* applies to instances in which the State fails to collect evidence, the district court nonetheless applied *Chouinard* rather than *Ware*; this was error. *See Vigil*, 2014-NMCA-096, ¶ 20.

## II.    Reversal and Remand Is Necessary So That the District Court Can Address the Second Part of the *Ware* Test

{4}    *Ware* requires a district court to ask first whether the uncollected evidence is "material to the defendant's defense." 1994-NMSC-091, ¶ 25. If the evidence is not material, no sanction may be imposed. *Id.* However, if the evidence is material, the court proceeds to the second part of the test, assessing "the conduct of the investigating officers" to determine whether such conduct warrants a sanction and if so, what sanction is best suited to the circumstances. *Id.* ¶ 26.

{5}    In this case, although the district court did not apply the *Ware* test, the court addressed materiality because materiality is required by both *Ware* and *Chouinard. See State v. Fero*, 1988-NMSC-053, ¶¶ 3-5, 7, 10, 107 N.M. 369, 758 P.2d 783 (outlining that the evidence must be material under *Chouinard* and defining material evidence in

its application of the test); *Ware*, 1994-NMSC-091, ¶ 25 (applying the definition of material evidence from *Fero* to situations of uncollected evidence). The court concluded that "[the] evidence is material." On appeal, the State challenges this conclusion and argues that even if the evidence is material, the conduct of the investigating officer does not warrant the sanction of dismissal. We address each point in turn.

## A.      Materiality of Evidence

**{6}**      Materiality presents a question of law that we review de novo: "whether the evidence that the state failed to gather from the crime scene is material to the defendant's defense, as opposed to being extraneous or duplicative of other evidence." *State v. Torrez*, 2013-NMSC-034, ¶ 27, 305 P.3d 944; *State v. Worley*, 2020-NMSC-021, ¶ 12, 476 P.3d 1212 (stating that we review questions of law de novo). "Evidence is material only if there is a reasonable probability that, had the evidence been available to the defense, the result of the proceeding would have been different." *Ware*, 1994-NMSC-091, ¶ 25 (text only) (citation omitted).

**{7}**      The State argues that the vehicle is not material because (1) the State has evidence sufficient to prove the charged crimes; and (2) the evidence from the vehicle would be duplicative. We do not believe that the State has carried its burden of demonstrating that the district court erred. *See State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211.

**{8}**      In support of its first argument, the State asserts it has sufficient evidence to prove its case without the vehicle because the investigating officer "testified that there was one bullet hole" in the vehicle and that "Mr. Cooper could testify as to the facts and that he was shot at." We are unpersuaded because materiality is not determined in relation to the State's case but instead in relation to Defendant's defense. *See Ware*, 1994-NMSC-091, ¶ 25 (stating the uncollected evidence "must be material to the defendant's defense"). We reject the State's argument that the evidence at issue was not material because other evidence "would have been sufficient to satisfy the elements of the charged offenses." This argument is not consistent with *Ware*, which requires us to focus on the potential impact of the evidence that was not collected, not on whether other evidence would suffice to uphold a conviction on appeal. *See State v. Garcia*, 2005-NMSC-017, ¶ 12, 138 N.M. 1, 116 P.3d 72 (explaining that when an appellate court "review[s] a verdict for sufficiency of the evidence, [its] role is to determine whether a rational fact-finder could determine beyond a reasonable doubt the essential facts necessary to convict the accused").

**{9}**      Turning to the evidence before us, we see no error in the district court concluding the vehicle is material based on its impeachment value. In determining whether evidence is material, this Court has considered the evidence's value in impeaching a key witness in the state's case. *See State v. Redd*, 2013-NMCA-089, ¶¶ 26-28, 308 P.3d 1000 (declining to overturn the district court's finding that evidence was material, under a *Chouinard* analysis, merely "because its only purpose was to impeach [the v]ictim's testimony and challenge her credibility" when the victim was "a crucial or critical

witness"); *State v. Huerta-Castro*, 2017-NMCA-026, ¶¶ 31, 40, 45-47, 390 P.3d 185 (determining, under an analysis pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), that evidence was material because it could be used to impeach a witness who played a "central role" in the state's case). In this case, the district court observed that the State had no case without Mr. Cooper's testimony and that Mr. Cooper's version of events contained "numerous discrepancies and differences. *See State v. Harris*, 2013-NMCA-031, ¶ 8, 297 P.3d 374 ("Oral comments by a judge may be used to clarify a written ruling by the court."). In light of the State's reliance on Mr. Cooper's testimony and without any argument by the State that the evidence could not be used for impeachment, we see no error in concluding that such evidence is material. *See Ware*, 1994-NMSC-091, ¶ 25.

**{10}** Turning to the State's second argument, it asserts that the vehicle would duplicate the following evidence: crime scene photographs of the bullet hole in Mr. Cooper's cab door; various officers' observations that the door had a bullet hole; the investigating officer's testimony that he did not find a bullet or its fragments in the vehicle; the firearm found in Defendant's possession; and Mr. Cooper's testimony and 911 call regarding the incident. The problem with the State's argument is that it assumes that the evidence it has identified could only be corroborated by—and could not be rebutted by—the evidence at issue. We do not believe that is correct. As the district court observed during the hearing, there was not an exit hole in the truck door, which means that if a bullet made the hole in the door, it might be possible to find the bullet or its fragments inside the door panel. *See Harris*, 2013-NMCA-031, ¶ 8 ("Oral comments by a judge may be used to clarify a written ruling by the court."). Regardless of whether retention of the truck would have yielded a bullet or bullet fragments or nothing at all, we do not believe that evidence would have been merely duplicative. The absence of a bullet and fragments could support a defense theory that the hole was not created by a bullet. And the presence of the bullet or its fragments—if compared to the firearm or bullets found in Defendant's possession—could support a defense theory that the hole was not made by a bullet fired by Defendant.

**{11}** Based on the arguments presented by the State, we are not persuaded that the district court erred by concluding that the vehicle is material evidence.

## B.     The Investigating Officer's Conduct

**{12}** Although we have affirmed the district court's conclusion as to the materiality of the uncollected evidence, we are unable to address the merits of the second part of the *Ware* test because the district court did not address it and we may not address it in the first instance as it presents a question of fact. *See State v. Wilson*, 1998-NMCA-084, ¶ 18, 125 N.M. 390, 962 P.2d 636 ("Fact-finding is a function of the district court."). The second part of the *Ware* test requires courts to consider the investigating officer's conduct to determine whether a sanction is appropriate and, if it is, which of the available sanctions is warranted. *See* 1994-NMSC-091, ¶ 26. Specifically, the court's task is to determine whether the investigating officer's "failure to collect the evidence was done in bad faith," with gross negligence, with mere negligence, or in good faith. *Id.*

Those determinations guide the court in its ultimate decision regarding the appropriate sanction, if any. *See id.* For a finding of bad faith, the district court may suppress the evidence; for gross negligence, the court may provide the jury with an adverse inference instruction; and for mere negligence, "sanctions are inappropriate, but the defendant can still examine the prosecution's witnesses about the deficiencies of the investigation and argue the investigation's shortcomings against the standard of reasonable doubt." *Id.* Notably, the sanctions available to the district court under the *Ware* analysis do not include that of dismissal, as was ordered in this case.

{13}    Here, the State argues that sanctions were inappropriate because the evidence suggested that the investigating officer's conduct was in good faith. But whether or not the officer acted in good faith or with some other intent is a factual question, *see State v. Wasson*, 1998-NMCA-087, ¶ 12, 125 N.M. 656, 964 P.2d 820, and it is therefore a question for the district court, not this Court. *See Wilson*, 1998-NMCA-084, ¶ 18. Because the district court never determined the investigating officer's intent underlying his actions, we remand this case to the district court so that it may make that determination.

**CONCLUSION**

{14}    We reverse and remand for further proceedings consistent with this opinion.

{15}    **IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JACQUELINE R. MEDINA, Judge**