537 P.2d 51

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Walter K. MAZUREK, Defendant-Appellant.**

**No. 1639.**

Court of Appeals of New Mexico.

June 4, 1975.

Chester H. Walter, Jr., Chief Public Defender, Bruce L. Herr, Appellate Defender, Sarah M. Singleton, Associate Appellate Defender, Santa Fe, for defendant-appellant.

Toney Anaya, Atty. Gen., Ralph W. Muxlow, II, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

LOPEZ, Judge.

The defendant was convicted of armed robbery contrary to § 40A–16–2, N.M.S.A. 1953 (2d Repl.Vol. 6, Supp.1973). After judgment and sentence the defendant appeals; we affirm.

The defendant raises six issues: (1) error in refusing defendant's requested instruction; (2) double jeopardy; (3) error in instructions given regarding criminal intent; (4) void sentence; (5) violation of defendant's right to a speedy trial; and (6) failure of the trial court to sentence the defendant in his presence.

On October 17, 1973, the victim went to La Entrada Bar in Albuquerque, New Mexico at about 8:10 p. m. As he entered the bar, he spoke to some friends inside and then he went into the bathroom. The co-defendant, Bobby Garcia, then entered the bathroom, pulled a gun, and demanded the victim's money, wallet and other valuables. The defendant entered, looked out the door, and went behind a partition to the toilet. The victim was able to look at the defendant for a full 10 to 20 seconds. The lighting was good and he got a good look at the defendant's face. The bartender at the bar testified that the defendant was the person who had entered the bathroom behind the victim. The bartender also testified that the defendant and Bobby Garcia then left the bar together.

The police arrived about 10 to 15 minutes after a phone call by the victim, and he reported the incident to them. About 15 to 20 minutes later, the police returned to the bar's parking lot with two men in the back seat of the patrol car. The car was about 50 to 75 feet away from the victim. The victim volunteered information at that time that they looked "like the two guys that robbed him." He got a good look at their faces. Two days later the po-

lice showed the victim four photographs from which he was able to identify the defendant as the one without the gun.

The defendant was arrested the same night and remained in jail pending trial. He was indicted as a principal in the offense along with Bobby Garcia. Trial of the joined offenses was continued four times, owing primarily to conflicting obligations of Garcia's counsel. The defendant ultimately sought and was granted a severance, and his separate trial was scheduled for March 29, 1974. The case was called for trial wherein the district attorney elicited evidence consisting of a gun and bullets which a police officer had taken from the defendant's car as a result of an illegal search and seizure. This evidence was shown to the jury. The defendant moved for a mistrial and it was granted.

The defendant was brought to trial a second time and was convicted. It is this trial from which the present appeal is taken.

### (1) *Defendant's requested instruction*

The defendant requested the trial court to give the following instruction on the danger of eyewitness identification which was denied:

> "You should receive evidence of eye witness identification with caution. Eye witness identification is frought with inherent dangers, and where eye witness identification alone is relied upon by the State, without corroboration, you should receive this testimony with extreme caution."

The defendant relies on State v. Padilla, 66 N.M. 289, 374 P.2d 312 (1959); and United States v. Barber, 442 F.2d 517 (3d Cir. 1971). Neither case supports the defendant's contention in the case at bar.

■ In *Barber,* the defendants were picked out of a crowd and were fleeing. In the case at bar, the victim had 10 to 20 seconds to observe the defendant at close range. The victim was positive in his identification of the defendant at each op-

portunity given him to make an identification.

In *Padilla,* the court failed to instruct fully on the defendant's theory of insanity. In the case at bar, the purpose of the requested instruction by the defendant was to alert the jury to be cautious regarding the testimony of identification by the victim. This ground was covered by the court's instruction on the credibility of witnesses and *on* the instruction *of* reasonable doubt. We believe that if the matter of the requested instruction is adequately covered by other instructions, then the failure of the court to instruct the jury as requested does not constitute any error. State v. Cranford, 83 N.M. 294, 491 P.2d 511 (1971); State v Zarafonetis, 81 N.M. 674, 472 P.2d 388 (Ct.App.1970).

### (2) *Double jeopardy*

Prior to trial, the defendant sought to suppress evidence consisting of a gun and bullets which were taken from the defendant's car which had been secured by the police. This motion was denied. During the trial of the case, this evidence was displayed to the jury. At this point, the defendant moved for a mistrial, which was granted.

Defendant relies upon Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed. 2d 425 (1973); United States v. Glover, 506 F.2d 291 (2d Cir. 1974); and United States v. Dinitz, 504 F.2d 854 (5th Cir. 1974). Defendant's theory is that retrial after a mistrial is barred by double jeopardy where the mistrial was caused by prosecutor misconduct. See § 40A–1–10, N.M. S.A.1953 (2d Repl.Vol. 6); compare State v. Tanton, N.M.App., 536 P.2d 269, decided May 7, 1975.

■ Double jeopardy, in this instance, normally attaches upon the empaneling of a jury, for it is then that the defendant is "put in jeopardy." Illinois v. Somerville, supra; United States v. Glover, supra. Having been "put in jeopardy", the defendant is thought to have the right to seek a favorable verdict from the jury

which he has accepted as satisfactory. United States v. Jorn, 400 U.S. 470, 91 S. Ct. 547, 27 L.Ed.2d 543 (1971). There are exceptions to this general rule, and the case of a single defendant whose trial has been aborted without his consent turns on its particular facts. Illinois v. Somerville, supra. This is the line of reasoning embodied in the *Glover* and *Dinitz* cases cited by defendant.

■■ The rule is, however, wholly inapplicable in the situation, as in the instant case, where the defendant requests a mistrial. As Justice Frankfurter noted in Gori v. United States, 367 U.S. 364, at 369, 81 S.Ct. 1523, at 1527, 6 L.Ed.2d 901 (1961), speaking for the Court:

". . . Suffice that we are unwilling, where it clearly appears that a mistrial has been granted in the sole interest of the defendant, to hold that its necessary consequence is to bar all retrial."

A motion for mistrial by defendant ordinarily removes the barrier to reprosecution. United States v. Jorn, supra. An exception occurs where the motion is the result of prosecutorial overreaching. Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963). There is no record of the proceedings in the first trial before this court. The reviewing court will not presume prosecutorial overreaching absent a record. See Montoya v. Moore, 77 N.M. 326, 422 P.2d 363 (1967).

■ The mistrial in this case was granted for the benefit of the defendant. The motion followed the attempted introduction of tainted evidence and resulted in the necessary exclusion of the evidence. See State v. Nemrod, 85 N.M. 118, 509 P.2d 885 (Ct.App.1973). The proper result of such a motion is a retrial without the tainted evidence, which occurred. We find no grounds in the record for reversing the second trial merely because the state attempted to introduce evidence at the first trial which was inadmissible. The trial court did not abuse its discretion and there is no showing of prosecutorial over-

reaching amounting to gross misconduct. Illinois v. Somerville, supra.

(3) *Instructions regarding criminal intent*

Defendant has two parts to this argument: (1) that the jury should have been instructed on specific intent; and (2) that the instructions given were insufficient to inform the jury of the requirement of even general intent. We disagree.

The court instructed the jury on criminal intent as follows:

"The material allegations of the indictment necessary to be proven to your satisfaction and beyond a reasonable doubt before you can find the defendant guilty are that at the county of Bernalillo in the State of New Mexico on the 17th day of October, 1973, the defendant did commit a theft of things of value, to wit: monies and other items of value from the immediate control of Clarence Garcia, 3900 Tulane, NE, Apartment 36, Albuquerque, New Mexico, by use or threatened use of force or violence and while armed with a deadly weapon, to wit: a firearm.

". . .

"Criminal intent is more than an intentional act; it is a mental state of conscience [sic] wrongdoing. It is an essential element of the crime with which defendant is charged and must be proven beyond a reasonable doubt.

"Intent is seldom susceptible of direct proof and may be inferred from the facts and circumstances surrounding the case.

". . .

"You are instructed that an accomplice is one who knowingly, voluntarily, and with common intent with the principal offender, unites in the commission of the crime.

"Mere presence at the scene of a crime will not support a conviction as either a principal or an aider or abettor. Presence must be accompanied by some

outward manifestation or expression of approval. To be an aider or abettor, one must share the criminal intent of the principal. There must be a community of purpose, a partnership, in the unlawful undertaking."

■ We believe that these instructions, including those given in the language of the statute, were sufficient to describe both general and specific criminal intent. See State v. Gunzleman, 85 N.M. 295, 512 P.2d 55 (1973); State v. Puga, 85 N.M. 204, 510 P.2d 1075 (Ct.App.1973).

The court fully instructed the jury regarding all the elements of the crime against the defendant. State v. Gonzales, 86 N.M. 556, 525 P.2d 916 (Ct.App.1974); State v. Martinez, 85 N.M. 198, 510 P.2d 916 (Ct.App.1973).

*(4) Void sentence*

■ The defendant argues that his sentence was based on both § 40A–16–2, supra, and § 40A–29–3.1(B), N.M.S.A.1953 (2d Repl.Vol. 6), and is void under the holding of State v. Blea, 84 N.M. 595, 506 P.2d 339 (Ct.App.1973). We need not reach the problem addressed by the defendant, since he was sentenced only under § 40A–16–2, supra. State v. Sanchez, 87 N.M. 140, 530 P.2d 404 (Ct.App.1974) [Sutin, J., specially concurring].

*(5) Violation of the defendant's right to a speedy trial*

■ The alleged denial of the defendant's right to a speedy trial is based upon an extension granted to the prosecution by our Supreme Court under Rule 37. [Rules of Criminal Procedure, § 41–23–37, N.M.S.A.1953 (2d Repl.Vol. 6, Supp.1973)]. This being the case, we cannot review this point. State v. Sedillo, 86 N.M. 382, 524 P.2d 998 (Ct.App.1974).

*(6) The failure of the trial court to sentence the defendant in his presence*

■ The defendant argues that he was not present when the trial court signed and entered the written judgment and sentence on May 29, 1974. However, the written sentence does show that on May 21, 1974, the defendant and his attorney appeared in person before the trial judge for oral sentencing. The written sentence is merely a reduction to writing of the oral sentence and as such is only a ministerial act. See United States v. Sumpter, 287 F.Supp. 608 (S.D.Tex.1968). Therefore, the sentence was properly imposed by the trial court.

We find no error in any of the points alleged by the defendant. Accordingly, the judgment and the sentence are hereby affirmed.

It is so ordered.

SUTIN and HERNANDEZ, JJ., concur.