

Donald C. Schutte, Albuquerque, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Sammy Lawrence Pacheco, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

596 P.2d 860

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**John R. COOK, Defendant-Appellant.**

**No. 3800.**

Court of Appeals of New Mexico.

May 24, 1979.

## OPINION

HENDLEY, Judge.

Defendant appeals his conviction of ten counts of forgery contrary to § 30–16–10, N.M.S.A.1978. His first point for reversal is dispositive—whether under the facts he could be convicted of forgery. We reverse.

*Facts*

Defendant was indicted by the Bernalillo County Grand Jury on ten counts of forgery contrary to § 30–16–10, supra, or in the alternative, on ten counts of issuing worthless checks contrary to § 30–36–4, N.M.S.A. 1978. At the close of all the evidence, the State elected to send only the forgery counts to the jury. Defendant objected and renewed his motion for a directed verdict.

The jury found defendant guilty on all counts.

Defendant opened a checking account at Republic Bank in Albuquerque under the name of John R. Cook. He signed the signature card under the same name and produced a New Mexico driver's license as proof of identification. He gave his birthdate as January 20, 1958, and listed the same social security number as that on his military identification card under the name of John R. Cook. He gave a false address and telephone number, the latter belonging to a woman, Alice Smith, who did not know defendant and did not give him permission to use her number.

Through the testimony of a Mrs. Cook, the State established that she had a son, John R. Cook, who was born January 20, 1958, and died January 22, 1958. An FBI agent, to whom defendant had spoken, testified that defendant had told him that he previously had been in the military under a different name, but had left the service under questionable circumstances. He had wished to reenlist and, therefore, went to the newspaper files and reviewed infant deaths for the year in which he was born. He had found the name John R. Cook, obtained a birth certificate, entered the military and obtained an identification card in that name.

The vice president of Republic Bank testified that "Cook" had set up a checking account with $50.00, withdrew $45.00, and had seven overdraft checks in the amount of $6,000. The evidence also showed that the $6,000 overdraft took the form of ten separate transactions wherein defendant wrote checks to several businesses in return for which he received valuable merchandise. The checks were returned to the businesses for insufficient funds.

### Forgery

In *Rapp v. State*, 274 So.2d 18 (Fla.App. 1973) the defendant opened a checking account in the name of another and wrote several checks on that account signing the assumed name. The question confronting that court was "whether one who opens a checking account under an assumed name commits the crime of forgery * * *." The court found that forgery may exist when an assumed or fictitious name is used when it is shown that the name was used with the intent to defraud.

However, the court found that the signing of a fictitious name is not forgery if the signer does not intend that the signature be taken as the genuine signature of the person owning the assumed name. Forgery, then, is not committed where a person assumes a name and obtains goods by signing that name to checks "so long as the check purports to be the very act of the person issuing it and not the act of another person."

In *Smith v. State*, 379 S.W.2d 326 (Tex. Crim.App.1964) defendant, using an assumed name, acquired a driver's license and, using the license as identification, opened a checking account under the assumed name. He then wrote several checks on the account, some of which were returned for insufficient funds. The court, in citing Texas precedent, found that defendant had not committed forgery since the act of passing the checks was his own act and did not purport to be that of another. *See also Young v. State*, 529 S.W.2d 542 (Tex. Crim.App.1975).

Section 30–16–10, supra, defines forgery as:

A. falsely making or altering any signature to, or any part of, any writing purporting to have any legal efficacy with intent to injure or defraud; or

B. knowingly issuing or transferring a forged writing with intent to injure or defraud.

* * * * * *

Although the New Mexico statute reads somewhat differently than do the Florida and Texas statutes, the effect on the case at hand is the same. Here, defendant assumed the name and identity of John R. Cook. He went into the military and obtained identification under his assumed name. As in the above cases, he used the identification to open a checking account.

Defendant then wrote and signed checks under his assumed name and tendered them to various stores in return for valuable merchandise. The acts did not purport to be those of another. Defendant did not commit forgery.

The State erred in electing to send the forgery counts to the jury, since legally no forgery could have been committed. Defendant's conviction of ten counts of forgery is reversed.

IT IS SO ORDERED.

ANDREWS, J., concurs.

SUTIN, J., concurring in part and dissenting in part.

SUTIN, Judge (concurring in part and dissenting in part).

I concur in the reversal and dissent for failure to discharge defendant.

David DeRuyver, now 20 years of age, rests comfortably in the State Penitentiary. He comes from a broken home. He attended school through the tenth grade. He enlisted in the military under the assumed name of his deceased brother who died in infancy, went AWOL, but decided to re-enlist. He had to do so under a different name. He reviewed newspapers of 1958, the year of his birth, and found the name of an infant who had died that year—"John R. Cook." David obtained the infant's birth certificate for purposes of re-enlisting in the military. He entered the military and obtained an identification card in the name of "John R. Cook," then "left" or "deserted" the military. He married and fathered two children.

David learned the art of issuing worthless checks. He was indicted on ten counts stated in the alternative—issuing checks with insufficient funds, or in the alternative, forgery. The State and David presented testimony to the jury on both issuing worthless checks and forgery. Thereafter, the State elected to send the forgery charges alone to the jury. The charges of issuing worthless checks were dismissed. David was found guilty of all ten forgery charges.

The trial court entered severe consecutive sentences which would have kept David imprisoned for many years. Upon motion made, the sentence was lightened to shorter consecutive sentences. It is obvious that if David serves a number of years in the penitentiary, he will emerge as a confirmed criminal. He will so serve anyway. For unknown reasons, David obtained "joinder of Criminal Cause No. 30167 which involves violent offenses." He was convicted and sentenced concurrently with the forgery sentence. To me, the trial court should have denied consolidation. The record of the Criminal Cause No. 30167 does not appear.

In my dissent in *State v. Helker*, 88 N.M. 650, 655, 545 P.2d 1028, 1033 (Ct.App.1975), I said:

Helker is 19 years of age. He received three *consecutive* sentences in the State Penitentiary. * * * His life, as well as his liberty, are subject to the rack and the stake. We do not know what factors caused his departure from normal life. Was it his environment? His family? His schools? His church? His society? * * *

David needs rehabilitation, not prison.

Judges and lay persons shout: "Throw him in the penitentiary! Let him rot there!"—except, of course when it is their own son. The slow but sure decay of family life has cast thousands of children in the penitentiary, a relic of the middle ages. The news media and society have the freedom to continue to harass these comments of an appellate judge, but I shall continue to blame David's family and society for his imprisonment. When we sit in judgment in the last quarter of the 20th century, we should seek rehabilitation of youngsters, not the destruction of their spirits and desire to move into the flow of a good society. The Supreme Court in its infinite wisdom will deny publication of this opinion.

For additional authorships that hold David free from forgery, *see, People v. Hodgins*, 85 Mich.App. 62, 270 N.W.2d 527 (1978); *Winston v. Warden, Nevada State Prison*, 86 Nev. 33, 464 P.2d 30 (1970); *Dun-*

*lap v. State*, 169 Tex.Cr.R. 198, 332 S.W.2d 727 (1960).

**A.** *Double jeopardy prevents retrial on issuing worthless checks.*

The majority opinion remains silent on the issue of double jeopardy. The district attorney, having misplayed the record of the trial, may seek to play the record a second time. Upon the impaneling of the jury, double jeopardy attached. *State v. Mazurek*, 88 N.M. 56, 537 P.2d 51 (Ct.App. 1975). David's right not to be put in jeopardy twice for the same offense is constitutionally protected. *State v. Spillmon*, 89 N.M. 406, 553 P.2d 686 (1976); *State v. Sedillo*, 88 N.M. 240, 539 P.2d 630 (Ct.App. 1975).

David must be discharged.