1 P.3d 433

2000-NMCA-038

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Anna TORRES, Defendant–Appellant.**

**No. 20,154.**

Court of Appeals of New Mexico.

March 10, 2000.

Certiorari Denied, No. 26,261, May 1, 2000.

Patricia A. Madrid, Attorney General, M. Victoria Wilson, Assistant Attorney General, Santa Fe, for appellee.

Phyllis H. Subin, Chief Public Defender, Donna M. Bevacqua, Assistant Appellate Defender, Santa Fe, for appellant.

## OPINION

KENNEDY, Judge.

{1} Defendant appeals her conviction for "knowingly issuing or transferring a forged writing with intent to injure or defraud" in violation of NMSA 1978, § 30–16–10(B) (1963), claiming an insufficiency of evidence to support her conviction. Defendant asserts

there was insufficient evidence that she issued or transferred documents with the intent to injure or defraud. We disagree. She further asserts the documents she is convicted of passing do not "purport to have legal efficacy" as required by the statute. This latter question is not a question of sufficiency of the evidence, it is a question of law. *See State v. Wasson*, 1998–NMCA–087, ¶¶ 5–6, 125 N.M. 656, 964 P.2d 820. The documents passed by Defendant satisfy the statute under that standard. We accordingly affirm her conviction. Recognizing a need to clarify the view concerning the "legal efficacy" of forged documents as a matter of law, we issue this formal opinion.

## FACTS

{2} Mr. and Mrs. Arrevolos hired Defendant to help process immigration applications with the United States Department of Justice Immigration and Naturalization Service (INS) for their son, who was illegally residing in the United States. Defendant accepted a payment of $230 to perform the work. Defendant told the Arrevoloses INS would take about two months to process the documents. About a month later, the Arrevoloses returned to Defendant, who told them the documents would arrive at their house and not to ask her about it anymore. About three weeks later, the Arrevoloses went back to Defendant and asked Defendant to return their money and the documents. Defendant said the papers were at the bank and she would have them the following day.

{3} A couple of days later, Defendant returned the documents she had been given and gave the Arrevoloses a partially completed INS application. She also produced two additional documents and gave them to the Arrevolos: one was a receipt for money purporting to show she had paid INS a $70 processing fee for the documents and the other was a return receipt from the United States Postal Service (USPS) indicating INS had received the documents. Both documents were signed by Joseph Vigil, an alleged employee of INS, as the recipient of the respective items.

{4} The State presented evidence that the USPS return receipt had originally been attached to a letter sent to Joseph Vigil by a nursing home where Defendant worked. Mr. Vigil was in Clayton, New Mexico, at the time he allegedly signed the return receipt and was not an employee of INS. The State's handwriting expert identified some of the handwriting on the return receipt as definitely belonging to Defendant, and some of the handwriting as probably belonging to Defendant. The State's expert also testified that the cash receipt was written by Defendant and showed evidence of alteration, erasure, and the use of correction tape. The State's expert did not issue a conclusive opinion about the validity of the money receipt.

{5} According to Defendant she returned the papers to the Arrevolos without accepting any money and told them she could not help them when they could not produce the documentation she needed to complete her work. She does not attempt to explain how the Arrevolos came to possess two documents that bear her handwriting and indicate transactions between her and INS. Defendant argues the two documents she provided the Arrevolos were not "of legal efficacy" as required by the forgery statute and urges we vacate her conviction.

## DISCUSSION

### Standard of Review

{6} Defendant posits there was insufficient evidence in her trial for the jury to convict her of forgery. In reviewing her claim, we view the evidence in the light most favorable to sustaining the verdict. *See State v. Apodaca*, 118 N.M. 762, 765–66, 887 P.2d 756, 759–60 (1994). We do not reweigh the evidence or substitute our judgment for that of the jury. *See State v. Lankford*, 92 N.M. 1, 2, 582 P.2d 378, 379 (1978) ("Where testimony is conflicting, such conflict raises questions of fact for a jury to decide."). We resolve conflicting evidence and indulge all inferences in favor of the jury's decision. *See Apodaca*, 118 N.M. at 766, 887 P.2d at 760.

{7} Whether the forged documents in this case "purport to have legal efficacy" is a question of law. *See Wasson*, 1998–NMCA–087, ¶¶ 6–9, 125 N.M. 656, 964 P.2d 820; *see also* UJI 14–1643 NMRA 2000 committee commentary. We review questions of

law de novo. *See Wasson,* 1998–NMCA–087, ¶ 6, 125 N.M. 656, 964 P.2d 820.

### Legal Efficacy

{8} Section 30–16–10 defines the elements of forgery as follows:

Forgery consists of:

   A.  falsely making or altering any signature to, or any part of, any writing purporting to have any legal efficacy with intent to injure or defraud; or

   B.  knowingly issuing or transferring a forged writing with intent to injure or defraud.

Defendant sets forth a number of arguments asserting that the receipts in question do not possess legal efficacy as required by statute. Defendant's narrow reliance on *Wasson* is misplaced. Defendant urges that our interpretation of a document having legal efficacy be limited to " 'an instrument which upon its face could be made the foundation of liability' and 'an instrument good and valid for the purpose for which it was created.' " *Id.* ¶ 7 (quoting *State v. Nguyen,* 1997–NMCA–037, ¶ 14, 123 N.M. 290, 939 P.2d 1098). We disagree.

{9} The statute does not require the document to be a facially valid document of the sort it purports to be. First, *Wasson* directs us in our interpretation of the forgery statute by explaining that "[t]he language of penal statutes should be given a reasonable or common sense construction consonant with the objects of the legislation, and the evils sought to be overcome should be given special attention." *Id.* ¶ 6 (quoting *State v. Ogden,* 118 N.M. 234, 243, 880 P.2d 845, 854 (1994)). Next, *Wasson* defines "legal efficacy" in much broader terms than the Defendant uses, explaining that "the statute applies to any writing which *purports* to have legal efficacy." *Id.* ¶ 9 "In New Mexico ... forgery is complete when the false instrument is issued or transferred with the requisite intent, regardless of its acceptance, or whether further steps are taken by the recipient to verify the writing." *Nguyen,* 1997–NMCA–037, ¶ 16, 123 N.M. 290, 939 P.2d 1098. "[F]orgeries often involve documents relied upon to establish financial obligations and entitlements in the conduct of private business, [but] ... also may involve 'any document required by law to be filed or recorded or necessary or convenient to the discharge of a public official's duties.' " *Wasson,* 1998–NMCA–087, ¶ 7, 125 N.M. 656, 964 P.2d 820 (citation omitted) (quoting 4 Charles E. Torcia, *Wharton's Criminal Law* § 491, at 94 (15th ed.1996)). "It is sufficient ... to constitute a forgery if there is a reasonable possibility that the false writing or instrument may operate to cause injury, although no actual injury therefrom is necessary." 36 Am.Jur.2d *Forgery* § 24 (1968) (footnote omitted).

{10} Based on New Mexico precedent, the proper basis for analyzing whether forgery has occurred is the actual role the document plays in the fraudulent transaction between victim and defendant. The INS receipt purports to have legal efficacy because on its face it would appear to put the onus on INS to act in some way—to process a completed form or explain why, having received documents upon which it should act, it has or has not done so. Moreover, it appears to be a "document required by law to be recorded or necessary or convenient to the discharge of a public official's duties." *Wasson,* 1998–NMCA–087, ¶ 7, 125 N.M. 656, 964 P.2d 820. Likewise, the USPS receipt would seem to appear on its face "good and valid for the purpose for which it was created," and would, "if genuine, ... apparently operate to the legal prejudice of the [USPS]." *Nguyen,* 1997–NMCA–037, ¶ 14, 123 N.M. 290, 939 P.2d 1098. Defendant's argument centers on the misplaced idea that the documents do not actually possess legal efficacy. By so insisting the Defendant ignores the work of this Court in *Wasson,* where we point out "the statute plainly is not limited to writings which actually have legal efficacy. Rather, the statute applies to any writing which purports to have legal efficacy." *Wasson,* 1998–NMCA–087, ¶ 9, 125 N.M. 656, 964 P.2d 820. Ballantine's Law Dictionary 1029 (3d ed.1969) defines "purport" as "[t]he apparent, but not necessarily the legal, import of the instrument."

### Sufficiency of the Evidence

{11} The jury found Defendant defrauded the Arrevoloses by taking money

for work she did not perform. She gave two receipts to the Arrevoloses to prove she had worked and to justify keeping their money. The fraud began when Defendant took money for work she either intended not to perform or just did not perform. It was consummated when she intentionally and fraudulently tried to retain the money. The Arrevoloses relied upon Defendant's representation that she would perform work and, because of Defendant's representation, paid her money.

{12} When the deal fell through, Defendant could easily have returned the papers and the money. She did not. She waited a few days and then returned the partially completed paperwork and two receipts to her victims. On their face, the receipts said two things: (1) INS had received both documents and money from Defendant which she sent on behalf of the Arrevoloses; and (2) Defendant had done at least some work for which she had been contracted.

{13} That Defendant had in fact done no work is evidence of her intent to use the documents to defraud the Arrevoloses. The fraudulent representation that Defendant would work for her pay was made by Defendant and relied on by the Arrevoloses at the inception of the contract. Whether the Arrevoloses actually relied on the receipts is immaterial. Defendant intended that the documents establish her right to money to which she was not entitled. The receipts are forged documents of "legal efficacy" provided by Defendant in furtherance of her intent and scheme to defraud the Arrevoloses of their money.

**CONCLUSION**

{14} The issue of whether the real crime was forgery or misdemeanor fraud is moot. Defendant's conviction for forgery is affirmed.

{15} **IT IS SO ORDERED.**

WECHSLER and BUSTAMANTE, JJ., concur.