2007-NMCA-103

166 P.3d 473

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Juan Carlos SANDOVAL,**
**Defendant–Appellant.**

**Nos. 25,841, 25,842.**

Court of Appeals of New Mexico.

June 19, 2007.

Certiorari Granted, No. 30,533,
Aug. 8, 2007.

**414**

Gary K. King, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Susan Roth, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

PICKARD, Judge.

{1} This consolidated appeal challenges Defendant's convictions in two separate cases of forgery. Both cases involve similar facts: Defendant provided false names and social security numbers on forms used to secure employment with two different employers. On appeal, Defendant raises a number of challenges to the forgery convictions as a matter of law, as well as issues concerning lesser included offenses and suppression of evidence. We hold that Defendant's actions did not constitute forgery as a matter of law, and we reverse.

## BACKGROUND

{2} Defendant was born in Peru and had legally entered the United States with a visitor visa when he applied for work with SOS Staffing Services (SOS) in March 2003. Defendant was asked by a manager to complete an employment application, an employment eligibility verification form (commonly known as an "I–9 form"), and an employee's withholding allowance certificate (commonly known as a "W–4 form"). On these forms, Defendant was asked for his name, his social security number, and documentation that would establish both his identity and his employment eligibility.

{3} On all relevant forms, Defendant identified himself as "Juan Carlos Medina." Defendant's actual name is Juan Carlos Sandoval. Additionally, Defendant provided a social security number and a resident alien number that both belonged to individuals other than Defendant. Defendant was subsequently hired by SOS.

{4} Approximately one year later, Defendant asked the same manager at SOS if he could change his social security number. Defendant also indicated that he wished to change his last name on his employment documents to Sandoval. The manager told Defendant that he could not change his social security number or his last name.

{5} A few months later, Defendant applied for work with Aztec Well Service (Aztec) using the name "Dion Dutcher." Defendant filled out another I–9 form, this time indicating that his name was Dion Dutcher. He also provided a social security card and resident alien card that indicated the same. Defendant was subsequently hired by Aztec.

{6} In May 2004, law enforcement learned of Defendant's employment at SOS and Aztec while investigating Defendant in connection with other possible crimes. An arrest warrant was issued, and Defendant was subsequently charged with three counts of forgery with respect to his employment at SOS and three counts of forgery with respect to his employment at Aztec.

{7} Defendant went to trial on the charges relating to his employment at SOS in April 2005. At trial, Defendant argued that the charges against him should be dismissed because the employment application lacked legal efficacy. Defendant also argued that his actions did not constitute forgery as a matter of law. The district court denied Defen-

dant's motion. Defendant was subsequently convicted on all three counts of forgery.

{8} Trial for the forgery counts relating to Defendant's employment with Aztec was scheduled to begin the day after his first trial. Before the second trial, Defendant informed the court that he planned to file a motion to dismiss on the same legal grounds raised in the first trial, i.e., lack of legal efficacy and actions not forgery as a matter of law. The court denied the motion, and Defendant entered a guilty plea, reserving the right to appeal on the legal grounds raised in the motion. We consolidated both cases for the purposes of appeal.

## DISCUSSION

{9} Below, Defendant was charged with six different counts of forgery. These counts included: (1) falsely making or altering a signature to an employment application, a writing purporting to have legal efficacy, with the intent to injure or defraud SOS Staffing Services; (2) falsely making or altering a signature to an I–9 form, a writing purporting to have legal efficacy, with the intent to injure or defraud SOS Staffing Services; (3) falsely making or altering a signature to a W–4 form, a writing purporting to have legal efficacy, with the intent to injure or defraud SOS Staffing Services; (4) falsely making or altering a signature to an I–9 form, a writing purporting to have legal efficacy, with the intent to injure or defraud Dion Dutcher and Aztec Well Service; (5) knowingly issuing or transferring a forged resident alien card, a writing purporting to have legal efficacy, with the intent to injure or defraud Dion Dutcher and Aztec Well Service; and (6) knowingly issuing or transferring a forged social security card, a writing purporting to have legal efficacy, with the intent to injure or defraud Dion Dutcher and Aztec Well Service. Defendant asserts that his actions do not constitute forgery because the documents described above lack legal efficacy and because his actions do not constitute forgery as a matter of law. Accordingly, we will first address whether the documents at issue have legal efficacy. Second, we will decide whether Defendant's actions constitute forgery as described in NMSA 1978, § 30–16–10(A) (2006).

## STANDARD OF REVIEW

{10} Legal efficacy is a purely legal issue that we review de novo. *State v. Cearley*, 2004–NMCA–079, ¶ 11, 135 N.M. 710, 92 P.3d 1284; *State v. Torres*, 2000–NMCA–038, ¶ 7, 129 N.M. 51, 1 P.3d 433. Similarly, "[w]hether forgery charges can be predicated on Defendant's alleged conduct is a question of statutory interpretation to which we afford de novo review." *State v. Wasson*, 1998–NMCA–087, ¶ 6, 125 N.M. 656, 964 P.2d 820.

## Legal Efficacy

{11} As interpreted by our courts, legal efficacy is "not limited to writings which actually have legal efficacy. Rather, the statute applies to any writing which *purports* to have legal efficacy." *Id.* ¶ 9; *see Torres*, 2000–NMCA–038, ¶¶ 9–10, 129 N.M. 51, 1 P.3d 433. "Our courts have defined an instrument with legal efficacy in the context of the forgery statute as 'an instrument which upon its face could be made the foundation of liability' and 'an instrument good and valid for the purpose for which it was created.'" *Cearley*, 2004–NMCA–079, ¶ 12, 135 N.M. 710, 92 P.3d 1284 (quoting *State v. Cowley*, 79 N.M. 49, 52, 439 P.2d 567, 570 (Ct.App.1968)). A "document required by law to be filed or recorded or necessary or convenient to the discharge of a public official's duties" is also considered to be legally efficacious. *Wasson*, 1998–NMCA–087, ¶ 7, 125 N.M. 656, 964 P.2d 820 (internal quotation marks and citation omitted).

{12} Contrary to Defendant's assertions, legal efficacy is a question of law to be decided by the district court. *See Torres*, 2000–NMCA–038, ¶ 7, 129 N.M. 51, 1 P.3d 433 (stating that whether a document has legal efficacy is a question of law). The committee commentary to the uniform jury instruction for forgery indicates that the "instruction does not require the jury to find that the writing purports to have any legal efficacy. Whether or not the state had proved the legal efficacy of the writing is a question of law." UJI 14–1643 NMRA committee commentary. Although Defendant correctly points out that committee commentaries are not binding authority, *see State v.*

*Barber*, 2004–NMSC–019, ¶ 10 n. 1, 135 N.M. 621, 92 P.3d 633, we do not perceive the commentary to be incorrect. Our Court has recognized on more than one occasion that legal efficacy is a question of law. *See, e.g., Cearley*, 2004–NMCA–079, ¶ 11, 135 N.M. 710, 92 P.3d 1284; *Torres*, 2000–NMCA–038, ¶ 7, 129 N.M. 51, 1 P.3d 433. Purely legal questions are decided by the court, not by the jury. *See Apodaca v. AAA Gas Co.*, 2003–NMCA–085, ¶ 15, 134 N.M. 77, 73 P.3d 215; *Corlett v. Smith*, 107 N.M. 707, 713, 763 P.2d 1172, 1178 (Ct.App.1988). We therefore disagree with Defendant's assertion that the question of the legal efficacy of the documents at issue should have gone to the jury.

{13} Turning to the documents at issue in the present case, we conclude that the I–9 form, W–4 form, social security card, and resident alien card all have legal efficacy. The employment application, however, does not. We will address each document in turn.

■■■ {14} Under federal law, employers are required to "verify the identity and eligibility of all new hires by examining specified documents before they begin work." *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 148, 122 S.Ct. 1275, 152 L.Ed.2d 271 (2002); *see* 8 U.S.C. § 1324a (2000). "The employer must physically examine the documentation presented, verify its genuineness under penalty of perjury, and complete two of the Employment Eligibility Verification Forms, known as Form I–9's, within three business days of the date of hire." *HTH Cos., Inc. v. Mo. Dep't of Labor & Indus. Relations*, 154 S.W.3d 358, 364 (Mo.Ct.App.2004); *see* 8 C.F.R. § 274a.2 (2006). An employer who complies with these requirements in good faith has an affirmative defense to any allegation that it has knowingly hired an illegal alien in violation of federal law. *Collins Foods Int'l, Inc. v. U.S. I.N.S.*, 948 F.2d 549, 553 n. 9 (9th Cir.1991) (citing 8 U.S.C. § 1324a(a)(3)). This presumption is rebuttable, however, if it is shown that the documents provided by the employee "did not reasonably appear on their face to be genuine." *Id.* (citing H.R.Rep. No. 99–682 (Part 1), 99 Cong.2d Sess. 56–57 (1986), U.S.Code Cong. & Admin.News 1986, 5649, 5660–5661). Additionally, employees who use false documents to establish their employment eligibility may be subject to fines and criminal prosecution. *Hoffman Plastic Compounds, Inc.*, 535 U.S. at 148, 122 S.Ct. 1275 (citing 18 U.S.C. § 1546(b) (2000)).

■■■ {15} Because federal law requires that I–9 forms be completed for each new hire and because such forms may potentially form the basis for liability for either employers or employees or both, it appears that the I–9 form is a document with legal efficacy. Although Defendant argues that the I–9 form lacks legal efficacy because it does not prejudice anyone's rights, our courts have defined legal efficacy more broadly than Defendant asserts. *See, e.g., Torres*, 2000–NMCA–038, ¶ 9, 129 N.M. 51, 1 P.3d 433 (observing that a document need only purport to have legal efficacy in order to satisfy the legal efficacy requirement); *Wasson*, 1998–NMCA–087, ¶ 7, 125 N.M. 656, 964 P.2d 820 (stating that a "document required by law to be filed or recorded or necessary or convenient to the discharge of a public official's duties" has legal efficacy (internal quotation marks and citation omitted)); *Cowley*, 79 N.M. at 52, 439 P.2d at 570 (defining legal efficacy as "an instrument good and valid for the purpose for which it was created"). We therefore conclude that the district court did not err in determining that the I–9 form has legal efficacy.

■■■ {16} Federal law requires employers to withhold certain federal taxes from wages paid to employees. *See* 26 U.S.C. § 3402(a)(1) (2000). An employee can avoid the tax withholding requirement by providing an employer with a W–4 form indicating that the employee can claim exempt status, i.e., he has incurred and will incur no tax liability for the prior and current years. *See* 26 U.S.C. § 3402(n); 26 C.F.R. § 31.3402(f)(5)–1 (a) (2006). A W–4 form also "indicates the number of personal exemptions an employee is claiming and . . . is used by the employer in determining the amount of income to be withheld from the employee's paycheck for federal-income tax purposes." *Black's Law Dictionary* 1610 (8th ed.2004). A W–4 form is signed under penalties of perjury, and "[c]ourts have uniformly held that the filing

of false W–4s constitutes evidence of a willful attempt to evade taxes." *United States v. Waldeck,* 909 F.2d 555, 560 (1st Cir.1990). Thus, for the same reasons that an I–9 form has legal efficacy, we likewise conclude that a W–4 form does as well. The form may be the basis for liability for an employee if he or she provides false information on the form. *See id.* Additionally, a W–4 form appears to be a document "good and valid for the purpose for which it was created." *Cowley,* 79 N.M. at 52, 439 P.2d at 570.

{17} We similarly conclude that a social security card and a resident alien card have legal efficacy. A "resident alien card ... would create a legal right or obligation to someone such as a prospective employer. The employer might reasonably conclude [the individual] would be lawfully authorized to work in the United States." *People v. Castellanos,* 110 Cal.App.4th 1489, 2 Cal. Rptr.3d 544, 547 (Ct.App.2003). Additionally, a resident alien card may be used to secure a social security card. *Id.* According to the I–9 form admitted as an exhibit below, a resident alien card may be used to establish identity and employment eligibility. Similarly, a social security card may be used to establish employment eligibility. A social security card may also be used to obtain a driver's license and/or open a bank account. *See United States v. Russell,* 905 F.2d 1450, 1453 (10th Cir.1990); *State v. Cook,* 93 N.M. 91, 92, 596 P.2d 860, 861 (Ct.App.1979). As such, we conclude that the district court did not err in determining that social security cards and resident alien cards both have legal efficacy.

{18} Conversely, we conclude that an employment application lacks legal efficacy. The State does not argue that an employment application is "an instrument which upon its face could be made the foundation of liability." *Cowley,* 79 N.M. at 52, 439 P.2d at 570. Nor is the application a "document required by law to be filed or recorded or necessary or convenient to the discharge of a public official's duties." *Wasson,* 1998–NMCA–087, ¶ 7, 125 N.M. 656, 964 P.2d 820 (internal quotation marks and citation omitted). At best, the employment application is evidence that Defendant applied for a job.

We observe, however, that "[o]ur case law does not support an interpretation of the legal efficacy requirement that would expand forgery to encompass the falsification or alteration of any item with potential evidentiary value." *Cearley,* 2004–NMCA–079, ¶ 15, 135 N.M. 710, 92 P.3d 1284. Because the application lacks legal efficacy, it cannot be the basis for Defendant's conviction for forgery. *See id.* ¶ 11 ("In the present case, if the photocopies of the altered NCRs do not have legal efficacy, then Defendant's actions do not constitute forgery as a matter of law, and Defendant's conviction is fundamental error."). As such, we reverse Defendant's forgery conviction for the making or signing of an employment application.

**Forgery**

{19} Having concluded that five of the six documents at issue in the present case have legal efficacy, we now turn to the question of whether Defendant's actions constitute forgery as a matter of law. In New Mexico, forgery consists of:

(1) falsely making or altering any signature to, or any part of, any writing purporting to have any legal efficacy with intent to injure or defraud; or

(2) knowingly issuing or transferring a forged writing with intent to injure or defraud.

Section 30–16–10(A). Relying on *Cook,* Defendant argues that signing documents with a false name is not a forgery when the signatory has assumed the name as his own identity and when the signed document only imposes liability on the person signing it. *See Cook,* 93 N.M. at 92, 596 P.2d at 861. We agree that *Cook* controls and reverse Defendant's convictions.

{20} In *Cook,* the defendant was discharged from the military under "questionable circumstances" and wished to reenlist. *Id.* He then "went to the newspaper files and reviewed infant deaths for the year in which he was born." *Id.* After finding the name "John R. Cook," a child who died as an infant in 1958, the defendant "obtained a birth certificate, entered the military and obtained an identification card in that name." *Id.* After

once again leaving the military, the defendant opened a bank account in Albuquerque under the name John R. Cook. *Id.* at 93, 596 P.2d at 862 (Sutin, J., dissenting). He used John R. Cook's social security number to open the account, used a false address and telephone number, and produced a driver's license bearing the same name. *Id.* at 92, 596 P.2d at 861. The defendant was later arrested and convicted of forgery resulting from a number of bounced checks written by the defendant on the bank account. *Id.*

{21} Our Court reversed the conviction, holding that where one's actions do not purport to be those of another, forgery is not committed. *Id.* at 92–93, 596 P.2d at 861–62. In coming to this conclusion, our Court relied on two out-of-state cases, *Rapp v. State,* 274 So.2d 18 (Fla.Dist.Ct.App.1973), and *Smith v. State,* 379 S.W.2d 326 (Tex.Crim.App.1964). In *Rapp,* the Florida Court of Appeals held that opening a checking account under an assumed name and writing checks on that account did not constitute forgery because "the signing of a fictitious name is not forgery if the signer does not intend that the signature be taken as the genuine signature of the person owning the assumed name." *Cook,* 93 N.M. at 92, 596 P.2d at 861 (discussing *Rapp,* 274 So.2d at 19). Under similar facts, our Court noted that the Texas Criminal Court of Appeals held in *Smith* that a defendant did not commit forgery because "the act of passing the checks was his own act and did not purport to be that of another." *Id.* (discussing *Smith,* 379 S.W.2d at 328).

{22} Although "[t]he generally accepted rule is that forgery may be committed through the use of a fictitious or assumed name," many cases turn on whether a particular jurisdiction has adopted a broad or a narrow definition of forgery. H.H. Henry, Annotation, *Forgery: use of fictitious or assumed name,* 49 A.L.R.2d 852, 854 (1956). Under the broad definition of forgery, an individual "who signs a check or other paper with a fictitious name that he represents to be his own is guilty of forgery if he acts with fraudulent intent, and if the paper has sufficient appearance of validity ... to enable it to be used to the prejudice of another." *Unit-*

*ed States v. Metcalf* 388 F.2d 440, 442 (4th Cir.1968); *see* Henry, *supra* at 854, 861–63. "Under the narrow rule it must appear that the false signature is the act of someone other than the person actually making it." *Metcalf* 388 F.2d at 442; *see* Henry, *supra* at 863 (stating that under the narrow rule, "the crime of forgery is committed when one, with intent to defraud, falsely makes or alters an instrument in writing so as to make it appear that such instrument is that of one other than the person actually making it").

{23} The holding in *Cook* indicates that our courts apply a narrow definition of forgery, and we believe that the facts in the instant case present a similar factual scenario to that in *Cook. See Cook,* 93 N.M. at 92–93, 596 P.2d at 861–62. Although the case at bar does not involve the passing of bad checks, Defendant, like the defendant in *Cook,* assumed a name and obtained identification under that name. Defendant then used that assumed name to obtain employment. As in *Cook,* Defendant did not represent that the names Juan Carlos Medina and Dion Dutcher represented anyone other than himself. The holding in *Cook* therefore mandates that Defendant's convictions be reversed in the present case. Interestingly, the State in its answer brief does not attempt to distinguish *Cook* and does not respond to Defendant's arguments regarding *Cook.* We hold that Defendant's actions do not constitute forgery as a matter of law and therefore reverse his convictions. *See People v. Hodgins,* 85 Mich. App. 62, 270 N.W.2d 527, 528–29 (1978) (holding that the defendant's use of another's driver's license and social security card to open a bank account and then pass bad checks on that account did not constitute forgery as a matter of law); *People v. Wesley,* 238 A.D.2d 939, 661 N.Y.S.2d 148, 149 (1997) (mem.) (holding that the defendant's use of an assumed name to obtain automobile insurance did not constitute the crime of forgery as his actions did not purport to be those of another); *see also* 36 Am.Jur.2d *Forgery* § 14 (2001) ("[A] person who uses a fictitious or assumed name, but does not represent that the name represents anyone other than himself or herself does not commit forgery.").

## CONCLUSION

{24} We reverse Defendant's convictions on six counts of forgery and remand with instructions to discharge him from liability for forgery.

{25} **IT IS SO ORDERED.**

WE CONCUR: CYNTHIA A. FRY and CELIA FOY CASTILLO, Judges.